*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  11a0118p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

MARSHALL WILLIAMS,
　　　　　　　　　*Defendant-Appellant.*

No. 09-5256

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-20161-001—Bernice B. Donald, District Judge.

Decided and Filed:  May 11, 2011

Before:  MARTIN and STRANCH, Circuit Judges; THAPAR, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Robert C. Brooks, Memphis, Tennessee, for Appellant.  Anne-Marie Svolto, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.  Marshall DeWayne Williams, Inez, Kentucky, *pro se.*

　　　　MARTIN, J., delivered the opinion of the court, in which STRANCH, J., and THAPAR, D. J., joined.  THAPAR, D. J. (pp. 16–21), delivered a separate concurring opinion.

_____

**OPINION**

_____

　　　　BOYCE F. MARTIN, JR., Circuit Judge.  While serving a sentence for planting a pipe-bomb in a newspaper vending machine that exploded and killed his stepfather, Marshall Williams mailed a letter containing a white substance purported to be anthrax

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

to the district court judge who denied his habeas corpus petition. Williams proceeded pro se at trial, and a jury convicted him of mailing a threatening communication to a federal judge in violation of 18 U.S.C. § 876(c). The district court proceeded to sentence Williams without first obtaining a presentence report and conducted the hearing by video conference because of concerns that Williams would be difficult to control if brought into the courtroom. Williams raises a host of issues on appeal and after careful review, we conclude that most are not meritorious. However, the district court erred by conducting the sentencing hearing without Williams physically present and without first obtaining a presentence report. Therefore, we **AFFIRM** Williams's conviction but **VACATE** his sentence and **REMAND** for resentencing.

## I.

In 1984, a jury convicted Williams of planting a pipe-bomb in a newspaper vending machine, which exploded and killed his stepfather, and the district court sentenced him to 109 years imprisonment. Williams filed several petitions for post-conviction relief contesting his continued incarceration and alleging misconduct by prison officials. Williams filed one of these petitions in the Western District of Tennessee, and it was assigned to Judge Breen. Judge Breen denied the petition on March 21, 2006.

On May 8, 2008, Judge Breen's chambers received an envelope from Williams containing a white substance. The letter stated that the reader had just been exposed to one gram of anthrax, and the building should be cleared immediately. Curiously, the letter also stated, "Do Not Panic, Stay Calm!" The letter was signed by Williams and contained links to websites attempting to garner support for his release. Judge Breen's law clerk discovered this letter and, understandably, did not stay calm. His clerk alerted officials who appear to have relatively quickly determined that the substance was not anthrax but just sugar.

Law enforcement determined that Williams was responsible for mailing the letter and, after a brief investigation, indicted him under 18 U.S.C. § 876(c) for mailing a threatening communication to a federal judge.

The district court appointed counsel to represent Williams. After a psychiatric exam revealed that Williams was competent to stand trial, the district court held a hearing on whether Williams could proceed pro se as he wished. Williams stated that he had several "self-taught" degrees including a juris doctorate. Williams had received a G.E.D. and, for a time, attended Blackstone School of Law in Dallas, Texas where he took courses in evidence, federal jurisdiction, and criminal law and procedure. After thoroughly questioning Williams about his qualifications and ability to represent himself, the district court granted Williams's motion to proceed pro se and appointed "elbow counsel" to assist him. The court granted the motion in part because it realized that Williams's trial strategy would likely put him in conflict with appointed counsel's ethical obligations.

On the day trial commenced, Williams objected to appearing in front of the jury in prison attire and requested that the district court give him a budget to purchase clothing for the trial. The district court explained that it could not provide any funds, but Williams could change into other clothing if someone provided it to him. The district court also admonished the jury not to take Williams's clothing into account.

At trial Williams did not contest that he mailed the letter or that it was sealed in an envelope with a white powder and a warning that it contained anthrax. Williams admitted this in his own testimony, during his closing statement, and in a taped phone conversation that the United States admitted into evidence. After the close of evidence, the jury quickly convicted Williams.

The district court scheduled sentencing for February 24, 2009. At the sentencing hearing Williams's elbow counsel appeared but the Marshals Service did not bring Williams because of concerns that he would be disruptive. The Marshals Service claimed that since his last court appearance Williams had been extremely uncooperative and combative, and had threatened to cause a disturbance at his next court appearance.

Because of this, the Marshals Service informed the district court that they would want Williams in full restraints along with three or four officers instead of the normal one or two if Williams needed to be present. The record does not indicate why the restraints and extra guards would not be satisfactory, but the district court determined that it would be best to conduct the sentencing hearing using video conferencing technology without Williams physically present. Williams's elbow counsel did not object.

Williams appeared by video at the sentencing hearing, which was held three days later. The video conference appears to have worked well with all parties able to clearly see and hear each other and Williams did not object to not being physically present in the courtroom. The district court sentenced Williams to five-years imprisonment to run consecutively with his prior 109-year sentence.

Williams's appointed counsel raises six issues on appeal. Williams also submitted a pro se supplemental brief alleging several additional errors in his trial and sentencing.

## II.

After trial, the district court held an initial hearing without Williams and decided to conduct his sentencing hearing by video conference. Williams's elbow counsel was present at this conference and did not object to this procedure. Three days later the district court conducted the sentencing hearing by video conference with Williams in prison and "appearing" on a video screen in the courtroom. At the time Williams did not object to not being physically present in the courtroom, but on appeal he argues that this procedure violated his right under Federal Rule of Criminal Procedure 43(a) to be present at sentencing.

### A.      Standard of Review.

Williams argues that we should review this claim involving an interpretation of the Rules of Criminal Procedure de novo. *Cf. United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005) (reviewing de novo a district court's application of the Federal Rules of Criminal Procedure). Williams did not raise this argument before the district court,

and we typically review claims that were not advanced in the district court under the heightened plain-error standard pursuant to Rule 52(b), *see, e.g.*, *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc).  However, even though plain-error review might have been available for this claim, we will not apply the plain-error standard unless requested to do so by one of the parties.  *See United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010); *United States v. Salem*, 597 F.3d 877, 884 (7th Cir. 2010); *United States v. Blackie*, 548 F.3d 395, 404 (6th Cir. 2008) (Sutton, J., concurring) ("The government never asked us to apply plain-error review to this claim, which by itself is reason enough not to apply this standard to the issue.").  Here, the United States did not challenge Williams's assertion that de novo review applied and never argued that this claim should be reviewed for plain error.  Instead, the United States argues that any error was harmless.  In contrast, the United States did argue that certain of Williams's other claims should be reviewed for plain error.  Therefore, because the United States failed to request that we apply plain-error review, it has forfeited any argument that we should apply that standard, and we will review Williams's claim de novo.

**B.     Whether the District Court Erred by Conducting the Sentencing Hearing by Video Conference.**

The district court erred by conducting the sentencing hearing by video conference with Williams not physically present in the courtroom.  With certain limited exceptions not applicable here,[1] Rule 43(a) requires that a criminal defendant be present at certain stages of his or her proceedings, including sentencing. Fed. R. Crim. P. 43(a)(3).  This requirement comports with the general view adopted by our sister circuits that criminal defendants have a constitutional right to be present at sentencing.  *See United States v. DeMott*, 513 F.3d 55, 58 (2d Cir. 2008); *United States v. Sepulveda-Contreras*, 466 F.3d 166, 169 (1st Cir. 2006); *United States v. Bigelow*, 462 F.3d 378,

---

[1]The United States argues that Williams was properly excluded from the courtroom because he was unruly and the Marshals Service was concerned about restraining him.  However, the United States does not argue that Williams's disruptive conduct brought him within the exception in Rule 43(c)(1)(C) that permits a court to exclude a defendant who persists in unruly conduct after a warning, and this exception does not apply because the district court did not first warn Williams before removing him.

381 (5th Cir. 2006); *United States v. Agostino*, 132 F.3d 1183, 1199 n.7 (7th Cir. 1997).

Three different courts of appeal have addressed whether electronic "presence" by video conference at sentencing satisfies the requirements of Rule 43(a), and all have concluded that it does not. *See United States v. Torres-Palma*, 290 F.3d 1244, 1248 (10th Cir. 2002); *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001); *United States v. Navarro*, 169 F.3d 228, 239 (5th Cir. 1999). Consistent with the results reached by our sister circuits, we agree that a district court may not conduct a sentencing hearing by video conference. The text of Rule 43 does not allow video conferencing. The structure of the Rule does not support it. As our sister circuits have recognized, and anyone who has used video conferencing software is aware, "virtual reality is rarely a substitute for actual presence." *Lawrence*, 248 F.3d at 303. While an individual may determine that the benefits of not having to travel outweigh the costs of having a meeting by video conference, we do not, and cannot, perform such a balancing with a criminal defendant's rights. Until such time as the drafters of the Rule instruct us otherwise, district courts may not conduct sentencing hearings by video conference.

Although the United States makes much of the fact that the video conferencing worked well and the parties were able to clearly see and hear each other, that argument misses the mark. The quality of the video conference connection is irrelevant in this situation. Rule 43 requires that the defendant be present, which simply cannot be satisfied by anything less than physical presence in the courtroom. Being physically present in the same room with another has certain intangible and difficult to articulate effects that are wholly absent when communicating by video conference. As written, the Rule reflects a firm judgment in favor of physical presence and does not permit the use of video conferencing as a substitute.

The United States argues that the error was harmless, but has failed to establish that Williams would not have received a lower sentence had he been physically present at sentencing. In harmless-error analysis, the United States bears the burden and "must demonstrate to the Court *with certainty* that the error at sentencing did not cause the

defendant to receive a more severe sentence." *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009) (internal quotation marks and citation omitted). Harmless-error analysis in this context is, as the Tenth Circuit recognized in rejecting such an argument, just a different angle on the arguments in favor of video conferencing because of its efficiency. *See Torres-Palma*, 290 F.3d at 1248; *accord United States v. Thompson*, 599 F.3d 595, 601 (7th Cir. 2010) (rejecting harmless-error argument where the district court violated Rule 43 by conducting a supervised-release revocation hearing by video conference because "there is no way to know what the judge would have done had he been present . . . and face-to-face with [the defendant]"). Although the United States is correct that Williams might have received the exact same sentence if he had been physically present, it has offered nothing to convince us that he certainly would have and, therefore, failed to meet its burden.

District courts have broad discretion in selecting a sufficient sentence for each individual defendant. In light of this discretion, without any argument from the United States based on the unique facts of this case, we cannot now substitute our judgment for that of the district court and speculate as to what sentence Williams might have received had he been physically present. Therefore, because the United States did not carry its burden to establish that the error was harmless, and the district court erred by conducting the sentencing by video conference, we vacate Williams's sentence and remand for resentencing.

**III.**

Williams also argues that the district court erred by sentencing him without first having a presentence report prepared. At the sentencing hearing, Williams did not object to proceeding without a presentence report and attempted to waive preparation of one. While we would generally review this claim for plain error, *see* Fed. R. Crim. P. 52(b), like Williams's claim that he was denied the right to be present at sentencing, we also review this claim de novo because the United States has not asserted that plain-error review should apply.

Although it is not preferred, a district court need not obtain a presentence report before sentencing a defendant.

> Presentence reports, while often an important resource, are not a mandatory part of the sentencing process. Both the Federal Rules of Criminal Procedure and the Sentencing Guidelines expressly provide that a district judge may sentence a defendant without a presentence report "[if] the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record."

*United States v. Brown*, 557 F.3d 297, 299 (6th Cir. 2009) (alteration in original) (quoting Fed. R. Crim. Pro. 32(c)(1)(A)(ii); U.S.S.G. § 6A1.1(a)(2)). While a district court may sentence a defendant without a presentence report, the defendant may not waive preparation of a presentence report. U.S.S.G. § 6A1.1(b); *Brown*, 557 F.3d at 300.

Here, the district court erred by relying on Williams's waiver to impose a sentence without first obtaining a presentence report. Although the district court conducted the sentencing hearing before this Court issued its decision in *Brown*, the Guidelines in effect at the time of sentencing stated that a defendant may not waive preparation of the presentence report. U.S.S.G. § 6A1.1(b) (2008); *cf., e.g.*, *United States v. Orleans-Lindsay*, 572 F. Supp. 2d 144, 158, 164 (D.D.C. 2008) (making the requisite finding that it could impose a sentence without a presentence report after defendant attempted to waive preparation of a presentence report). District courts need not use any magic words in order to make this finding. However, there is nothing in this record from which we can infer that the district court found it could sentence Williams without a presentence report. After the jury returned its verdict, the district court asked Williams if he wished to waive preparation of a presentence report and proceed with expedited sentencing. Williams agreed and the district court stated that "the Presentence Report is waived." At the sentencing hearing the district court remarked that "[t]he preparation of a Presentence Report was waived in this case so that Mr. Williams could expeditiously appeal the decision of the jury as well as the sentencing decision." From the record we cannot conclude that the district court found it could proceed without a presentence report. The only justification offered for proceeding without the presentence

report is Williams's waiver.  However, because a defendant may not waive preparation of a presentence report, the district court erred when it imposed a sentence without first obtaining the presentence report or making a finding on the record that it could proceed without it.

Because the use of video conferencing requires us to vacate Williams's sentence and remand for resentencing, we expect that the district court will either make the requisite finding that a presentence report is not necessary or obtain a presentence report before resentencing Williams.

**IV.**

Turning back to the pre-trial proceedings, Williams argues that the district court did not make the necessary findings that he had knowingly and voluntarily waived his right to counsel.  The United States argues that we should review this claim for plain error, but this Court has not clearly identified what the appropriate standard of review is.  Some of our prior decisions apply a de novo review, while others review for plain error.  *See United States v. McBride*, 362 F.3d 360, 365-66 (6th Cir. 2004) (discussing the conflicting standards of review applied in this circuit).  *McBride* and other cases have left resolving this issue for another day, *see id.* at 366, and we do the same as the waiver was proper under either standard.

The Sixth Amendment guarantees criminal defendants the right to trial counsel and also the right to proceed without counsel.  *Faretta v. California*, 422 U.S. 806, 835 (1975).  A criminal defendant may waive his or her right and proceed without counsel, but must do so knowingly and voluntarily.  *Id.*  When an accused wishes to represent himself, the district court "must ask the defendant a series of questions drawn from, or substantially similar to, the model inquiry set forth in the *Bench Book for United States District Judges*."  *McBride*, 362 F.3d at 366 (citing *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987)).  Very generally, the model inquiry is thirteen questions about the defendant's familiarity with the law and legal system, and the charges against him.  This inquiry must be followed by a strong admonishment that the court recommends against the defendant trying to represent himself or herself.  Additionally, the district

court must make a finding that the defendant has knowingly and voluntarily waived his or her right to counsel.  *See id.*

The district court's questioning substantially covered the thirteen model questions drawn from the Bench Book and it gave Williams a stern admonishment against proceeding without counsel.  Williams, however, argues that the district court did not make the requisite finding that he had knowingly and voluntarily waived his right to counsel and instead stated, "I find that you have the requisite knowledge, education and ability to represent yourself in this matter."  The court continued, "You know what you want to do and so you are capable of doing that."  Although the district court did not specifically find that Williams had knowingly and voluntarily waived his right to counsel, the colloquy establishes that Williams's waiver was knowing and voluntary, and the district court substantially made the required finding.

Additionally, there is no suggestion that Williams's waiver was not knowing or voluntary.  Accordingly, we hold that the district court properly questioned Williams and determined that his waiver of the right to counsel was knowing and voluntary.

## V.

On appeal, Williams also asserts that the district court erred by forcing him to proceed at trial in prison clothing.  However, the district court did not prohibit Williams from wearing clothing of his choice at trial, and did not violate his rights by failing to provide him with alternate clothing.  A criminal defendant cannot be forced to appear at trial in prison clothing.  *Estelle v. Williams*, 425 U.S. 501, 512-13 (1976); *United States v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004).  However, the court is not required to furnish alternate clothing for the defendant.  *Brown*, 367 F.3d at 554 (proceeding in prison clothing did not violate the defendant's rights where the court was willing to wait for family members to bring other clothing, but they failed to do so).  Here, the district court remarked that it would let Williams change if someone brought him other clothing.  The district court's failure to provide Williams funds to purchase clothing does not amount to compelling him to appear in prison clothing in violation of his constitutional

rights.  The district courts are not haberdasheries or money lenders.  With their already crowded dockets, they need not take on the additional responsibility of ensuring that criminal defendants are in their dress of choice.  Therefore, because the district court would have allowed Williams to change into other clothing if someone provided it for him, it did not force him to appear in prison attire and did not violate his constitutional right to a fair trial.

## VI.

Williams argues that the United States presented insufficient evidence to establish his guilt.  However, the evidence presented at trial was more than sufficient to establish Williams's guilt.  When a criminal defendant does not make a motion for a judgment of acquittal at the close of evidence, reversal is only appropriate on appeal if a "manifest miscarriage of justice" would result from affirming.  *United States v. Walden*, 625 F.3d 961, 967-68 (6th Cir. 2010) (quoting *United States v. Frederick*, 406 F.3d 754, 765 (6th Cir. 2005)).  "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt."  *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (internal quotations omitted).

In order to establish a violation of section 876(c) in this case, the prosecution was required to establish beyond a reasonable doubt that: (1) the defendant mailed a communication containing a threat to kidnap or injure a person; (2) the defendant acted knowingly; and (3) the recipient was a United States judge.  18 U.S.C. § 876(c).

However, far from establishing a miscarriage of justice, the evidence in this case appears to overwhelmingly establish Williams's guilt.  There was never any serious dispute that Williams mailed the letter purporting to contain anthrax.  He admitted at least twice during trial that he had done it and the government introduced a taped phone conversation where Williams admitted sending the letter.  Accordingly, the record is not devoid of evidence pointing to guilt and we affirm Williams's conviction.

Williams argues that the evidence was insufficient because, although he mailed the letter, it did not contain a threat. Whether a writing is a threat is a question of fact for the jury. *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994); *United States v. Taylor*, 972 F.2d 1247, 1251 (11th Cir. 1992); *United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir. 1979); *see United States v. Chick*, 955 F.2d 45, at *2 (6th Cir. 1992) (unpublished table decision). Here, the district court charged the jury that:

> A threat is a serious statement expressing an intention to injure any person which under the circumstances would cause apprehension in a reasonable person as distinguished from idle or careless talk, exaggeration or something said in a joking manner. It is not necessary for the government to prove that Mr. Williams intended to carry out a threat or to prove that Mr. Williams is capable of carrying out a threat.
>
> It is also not necessary for the government to prove that the recipient actually felt threatened.

At trial the clerk who opened the letter testified that the whole experience was "nerve wracking" and the United States presented evidence about the emergency response before authorities discovered that the substance was not actually anthrax. Under this objective standard, the record is not devoid of evidence establishing that the letter was a threat. Therefore, we hold that the jury's conclusion that the letter was a threat is supported by sufficient evidence.

This communication was a threat even though the danger of harm incurred immediately upon opening the letter and not at some future point. Williams argues that the message could not be a threat because it did not contain any prospective warning; the harm of being exposed to anthrax occurred as soon as the recipient opened the letter. Essentially, Williams contends that a threat must be something akin to, "Grant my release *or* I'll break your legs," and merely breaking legs would not be a threat. However, if Hollywood's portrayal of the mob world has taught us anything, merely breaking legs can be a threat. When Sam "Ace" Rothstein directs guards to smash a cheater's hand in Martin Scorsese's *Casino*, a reasonable person could interpret that as a threat. Casino (Universal Pictures 1995). The act is objectively a threat even though

some severe harm occurred immediately.    Similarly, several scenes in the critically acclaimed *The Godfather* also illustrate this principle.  For example, a reasonable person could interpret Sonny Corleone's actions as a threat when he beats up Carlo Rizzi after learning that Carlo was abusing Sonny's sister.  The Godfather (Paramount Pictures 1972).  Here too, a reasonable person could view Williams's letter as a threat even though, if the letter contained real anthrax, it would have harmed the recipient immediately.  Just as Sonny did not specifically indicate what would happen to Carlo if his conduct did not change, Williams need not do the same here for the communication to be a threat.

Over a dissent, the Third Circuit also concluded that communications containing fake anthrax, similar to the one Williams sent, were threats within the meaning of the statute even though they created an immediate fear of harm.  *United States v. Zavrel*, 384 F.3d 130, 137 (3d Cir. 2004).  Williams urges this court to adopt the dissent's argument in *Zavrel* that because the harm from being exposed to anthrax occurs immediately upon opening the envelope, such a communication is not a threat within the meaning of section 876.  *Id.* at 139 (Stapleton, J., dissenting).  The dissent argued that a communication such as this, which does not warn of any prospective injury or attempt to influence conduct under the possibility of future harm, is not a threat.  *Id.*  However, we disagree.  Such fine distinctions are not warranted and we hold that under an objective standard, the letter was a threat even though it did not specifically threaten any further injury beyond the initial harm brought on by opening the letter.

**VII.**

Williams's argument that the district court erred by failing to charge the jury that the United States must show Williams had the specific intent to threaten is also without merit.  This Circuit reviews a district court's decision not to give a requested instruction for abuse of discretion.  *United States v. Henderson*, 626 F.3d 326, 342 (6th Cir. 2010).  A district court abuses its discretion if "(1) the proposed instruction is substantially correct; (2) the proposed instruction is not substantially covered by other delivered

charges; and (3) the failure to give the instruction impaired the defendant's theory of the case." *United States v. Triana*, 468 F.3d 308, 315 (6th Cir. 2006).

This Court has not decided whether the United States must establish that a defendant had the subjective intent to threaten in order to establish a violation of section 876(c) and we do not decide that issue at this time. Although we have previously held that section 875(c), which, analogously, prohibits sending threats to kidnap or injure a person, is a general intent crime, *United States v. DeAndino*, 958 F.2d 146, 149 (6th Cir. 1992), the Supreme Court has since recognized that in some circumstances the prosecution may need to establish that the defendant subjectively intended to make a threat, *Virginia v. Black*, 538 U.S. 343, 364-65 (2003). Nonetheless, even if we accepted Williams's argument, the district court's charge substantially reflected Williams's proposed instruction that the jury must find that he subjectively intended to make a threat. In pertinent part, the district court charged the jury that it must find Williams knowingly and willfully mailed a communication to Judge Breen. The court then continued that it must also find that Williams "knowingly and willfully included a threat to another person in that communication." Although we do not decide whether a defendant must have the subjective intent to threaten in order to violate section 876(c), these two instructions reflect that the jury had to find that Williams subjectively intended to make a threat. Therefore, the district court did not abuse its discretion in failing to give Williams's proposed instruction.

## VIII.

In addition to the six issues appointed counsel raised on appeal, Williams submitted a pro se brief alleging an additional nine errors. Generally, these claims relate to (a) whether Williams was properly removed from the courtroom for inappropriate conduct; (b) whether the trial judge needed to recuse herself; (c) whether the court properly denied Williams's request to serve eighteen subpoenas; (d) whether the district court should have appointed an investigator; (e) whether there was prosecutorial misconduct; (f) whether the district court sentenced Williams outside the statutory limits;

and (g) whether Williams's counsel was ineffective. Because Williams was represented by counsel on this appeal, we decline to address these pro se arguments. *Cf. United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (declining to address a defendant's pro se arguments because he was represented by counsel).

## IX.

While most of the issues that Williams raises on appeal are not meritorious, the district court did err by conducting the sentencing hearing by video conference and without a presentence report. Therefore, we **AFFIRM** Williams's conviction but **VACATE** his sentence and **REMAND** for resentencing with Williams present in the courtroom.

_____

**CONCURRENCE**

_____

THAPAR, District Judge, concurring.  I join the majority's opinion in full.  I write separately only to express my concern with a rule adopted in this and other circuits that allows parties to unilaterally waive plain error review.

Judges are not like the supercomputer Watson.  *See* http://www.engadget.com/2011/01/13/ibms-watson-supercomputer-destroys-all-humans-in-jeopardy-pract.  They can do their best to be prepared with the Rules of Procedure and Evidence, the relevant constitutional law, and applicable statutes—all refracted through two layers of precedent.  But they have no hope of knowing everything, and when unfamiliar issues arise in the courtroom, they will not catch them every time.  Even when they do, they cannot always delay the proceeding to find the right answer.  Clogged dockets and the delay imposed on parties' lives mean time is of the essence.  Fortunately, in our adversarial system, judges have some help.

The plain error rule, Rule 52(b) of the Federal Rules of Criminal Procedure, broadens responsibility for catching inevitable mistakes and prioritizing which are worth worrying about. *See Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009) (noting that "errors are a constant in the trial process" (quoting *United States v. Padilla*, 415 F.3d 211, 224 (1st Cir. 2005) (en banc) (Boudin, C.J., concurring))).  It says that parties who fail to direct district judges to potential errors cannot then seek relief from those errors on appeal—except in very narrow circumstances. *See United States v. Olano*, 507 U.S. 725, 732 (1993) (holding that courts of appeals should only review forfeited errors if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings" (citations and internal quotation marks omitted)).  And so it encourages litigants to decide what issues really matter and to raise them while the district court still has time to take action, rather than "sandbagging" and remaining silent pending the outcome of the case. *See Puckett*, 129 S. Ct. at 1428; *United States v. Young*, 470 U.S.

1, 15 (1985) (warning that there should not be an "unwarranted extension" of the "exacting definition of plain error" because it would skew the careful balance the rule is meant to protect).

The district judge is not the only one to benefit. Naturally, the rule preserves systemic judicial resources by "encourag[ing] all trial participants to seek a fair and accurate trial the first time around." *Johnson*, 520 U.S. at 466. And it gives the parties strategic latitude. Litigants may choose not to object even if they perceive a legal error. A defense attorney, for instance, may not object to certain testimonial hearsay about his client—which would be inadmissible under *Crawford v. Washington*, 541 U.S. 36 (2004)—because he knows it exposes an inconsistency in the government's theory of the case. Anyone who has tried a case knows that these strategic decisions—even foregoing certain constitutional rights—may look like error later, especially when viewed in isolation on a cold record. Yet, in the heat of battle, such decisions often make sense to a seasoned trial lawyer. The last thing the rules should do is encourage trial judges to get in the middle of these decisions and force defense attorneys to explain themselves with the government keenly listening.

So preserving Rule 52(b) as a limit on appellants' potential relief is important. Rules that allow courts to casually disregard it would be "fatal." *Puckett*, 129 S. Ct. at 1428 ("'[A] reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.'" (quoting *Padilla*, 415 F.3d at 224 (Boudin, C.J., concurring))). For this reason, courts of appeals should take a skeptical look at the rule adopted by this and other circuits, allowing parties to unilaterally waive the plain error standard of review by failing to ask for it. A close look, it turns out, reveals that the rule has little to recommend it.

First, allowing parties to unilaterally waive plain error review is hard to square with the language of Rule 52, which says nothing about the ability to waive the standard of review. And it is hard to reconcile with the Supreme Court's interpretation of that language. The *Olano* Court said that courts of appeals "cannot" reverse decisions based

on forfeited errors "unless Rule 52(b)" or some other provision allows it.  507 U.S. at 732.  And the Court has said that courts of appeals can "only" correct forfeited errors as allowed under Rule 52(b), emphasizing elsewhere that there "must" be plain error to correct forfeited errors.  *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010); *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).  Yet this is precisely what some courts of appeals are doing—reversing forfeited errors without regard for the requirements of Rule 52(b).

Second, proponents of this waiver rule have yet to offer a compelling explanation.  Some courts have offered no explanation.  *See*, *e.g.*, *United States v. Tapia-Escalera*, 356 F.3d 181, 183 (1st Cir. 2004); *cf. United States v. Jeffries*, 587 F.3d 690, 691 n.1 (5th Cir. 2009) ("We also note that the Government does not seek plain error review.").  But even those who have are unconvincing.  For instance, the Sixth Circuit apparently hangs its hat on the theory that the court of appeals can assume a party preserved an issue below if his opponent does not say otherwise.  *See*, *e.g.*, *United States v. Fuller*, 77 F. App'x 371, 380 n.9 (6th Cir. 2003).  But the Sixth Circuit's theory is an awkward fit where, as here, a party clearly did not object.  After all, Mr. Williams, no shrinking violet, lodged three objections at the outset of his sentencing, but neither he nor his counsel complained about it being performed via video conference.

Similarly, the D.C. Circuit offered, in a footnote, that parties are supposed to state whether they dispute their opponents' proposed standard of review under Federal Rule of Appellate Procedure 28(b); otherwise, the D.C. Circuit assumes the point is conceded.  *United States v. Cyr*, No. 91-01, 2001 WL 1699422, at *3 n.3 (D.C. Cir. Dec. 26, 2001).  But, under this view, an appellee could waive *any* standard of review.  Surely this is wrong.  A court of appeals would not, for instance, review a question of law for clear error just because both parties mistook it for a question of fact.  Nor would a court of appeals review de novo a decision committed to a district court's discretion just because the parties forgot to specify the standard of review.  And, not surprisingly, the case law supports the view that courts are not held hostage to the parties' poor briefing when

determining the appropriate standard of review.  *See Cordrey v. Euckert*, 917 F.2d 1460, 1465 (6th Cir. 1990) ("Although neither party discussed the proper standard of review on appeal, we conclude that the issue of waiver is a question of law or at least of mixed law and fact, subject to *de novo* review."); *see also United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) ("The parties' failure to brief and argue properly the appropriate standard may lead the court to choose the wrong standard.  But no party has the power to *control* our standard of review.  A reviewing court may reject both parties' approach to the standard.").

Also allowing waiver of Rule 52(b)'s plain error requirement, the Seventh Circuit analogizes to other instances in which a party is allowed to waive arguments that his opponent has "waived" an opportunity for relief.  In *United States v. Leichtnam*, for instance, the Seventh Circuit held that plain error review did not apply, even though the defendant failed to object to an error below, because the government neglected to argue that the defendant had "waived" the error by not objecting.  948 F.2d 370, 375 (7th Cir. 1991).  For support, it cited *Garlington v. O'Leary*, 879 F.2d 277, 282-83 (7th Cir. 1989)—a habeas case, not subject to Rule 52(b)—which held that "the defense of waiver can itself be waived by not being raised."  948 F.2d 370, 375 (7th Cir. 1991).  In turn, *Garlington* supported its broad rule with comparisons to overlooking a party's filing an untimely objection to personal jurisdiction because its opponent did not protest below, 879 F.2d at 282-83 (citing *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 663-64 (7th Cir. 1986)), and to overlooking procedural defaults in habeas cases because the respondent did not object, *id.* at 283, 283 n.7 (citing *Andrews v. United States*, 817 F.2d 1277, 1278 n.1 (7th Cir. 1987) and *Barrera v. Young*, 794 F.2d 1264, 1268 (7th Cir. 1986)).  See also *United States v. Kortgaard*, 425 F.3d 602, 610 (9th Cir. 2005) (holding that plain error is waivable because litigants can waive waiver arguments).

Set aside this view's conflict with the text of the rule, its conflict with the Supreme Court's interpretation of the rule, and the failure to distinguish between review of "waived" arguments (subject to no rule of procedure) and review of "forfeited" arguments (subject to Rule 52(b)).  The Seventh Circuit's analogy overlooks an

important nuance.  Sure, a court of appeals can examine an otherwise forfeited *issue* (e.g., was it error to sentence Williams by video?) if a party fails to notify the court of the forfeiture.  But this does not mean that the same forgetful party can waive the *standard of review* (e.g., plain error or de novo?) the court uses to evaluate that issue.  Indeed, courts of appeals, including this one, routinely hold that standards of review are not waivable.  *See United States v. Freeman*, – F.3d – , No. 09-4158, 2011 WL 1226091, at *5 (6th Cir. April 4, 2011) ("'[A] party cannot 'waive' the proper standard of review by failing to argue it.'" (quoting *Brown v. Smith*, 551 F.3d 424, 428 n. 2 (6th Cir. 2008))); *Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001) ("However, the court, not the parties, must determine the standard of review, and therefore, it cannot be waived." (citing *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1022 n.4 (9th Cir. 1997) (en banc) (O'Scannlain, J., concurring in part and dissenting in part))).  And with this in mind, at least one circuit has held that the parties cannot waive plain error review by failing to request it.  *United States v. Bain*, 586 F.3d 634, 639, 639 n.4 (8th Cir. 2009) (per curiam).

Courts seem to confuse this distinction because they simply read Rule 52(b) as controlling *whether* they can even address a forfeited issue in the first place, not as supplying a standard for *how* the court should review that issue.  What they overlook is that Rule 52(b) contains both a "whether" and a "how."  On the one hand, the Supreme Court has interpreted Rule 52(b) as limiting "whether" courts of appeals can even consider an issue.  Courts of appeals can only consider forfeited issues if they represent a "miscarriage of justice."  *Olano*, 507 U.S. at 736.  But on the other hand, Rule 52(b) also controls "how" courts of appeals review those forfeited issues.  It instructs courts to only correct an error if it is "plain" and "affects substantial rights."  *Id.* at 732-33.  So while it might make sense to say that a party can "waive" Rule 52(b)'s limit on "whether" to consider an "error," I know of no reason to also hold that a party can waive Rule 52(b)'s limits on "how" to consider that error—the standard of review.  *See Freeman*, 2011 WL 1226091, at *5.

Interpreting Rule 52(b) this way is consistent with the Seventh Circuit's analogies. In the same way that a respondent could waive an objection to allowing a court to consider a habeas issue otherwise procedurally defaulted, an appellee can waive an objection to a court of appeals considering a forfeited issue even though it does not represent a miscarriage of justice. But the respondent could not also waive the standard of review for the habeas issue, and neither could an appellee waive application of the plain-error-affecting-substantial-rights standard of review for the forfeited issue.

Accordingly, while I think the majority's decision is correct under the applicable law, I respectfully fear the applicable law in this and other circuits is wrong. The Eighth Circuit is on the right side of the split. And at least until Watson makes his way into every courtroom, plain error review ought to be unwaivable.