*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DION DELANDO ANDERSON,

Defendant-Appellant.

FOR PUBLICATION
March 31, 2022
9:10 a.m.

No. 354860
Ionia Circuit Court
LC No. 2020-017985-FC

Before: REDFORD, P.J., and SAWYER and MURRAY, JJ.

PER CURIAM.

Defendant, Dion Delando Anderson, appeals as of right his bench trial conviction and subsequent sentence of possessing a weapon in a prison, MCL 800.283(4). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 25 months to 15 years' incarceration. On appeal, defendant argues that (1) the trial court erred by convicting him against the great weight of the evidence, and (2) the trial court erred by sentencing him when he was not physically present but instead appeared remotely by video. We affirm defendant's conviction and sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Officer Roy Valdez, a Corrections Officer at Bellamy Creek Correctional Facility, testified that on October 7, 2019, a fight occurred in the yard of the correctional facility which resulted in a lockdown and issuance of an order to perform strip searches of the inmates in housing unit five. Officer Valdez testified that he placed a plastic trash can lid for prisoners to stand on in a small, concrete vestibule before conducting the searches. He performed approximately five strip searches on other prisoners in the vestibule before he searched defendant in the same vestibule. No other prisoner entered the area during defendant's search. Defendant stood on the plastic trash can lid during the search. Defendant disrobed entirely, one article of clothing at a time, and handed each article of clothing to Officer Valdez who checked each for contraband and found none. Officer Valdez then searched defendant's body for contraband and found none. Officer Valdez testified that nothing could have been hidden under the trash can lid because he would have seen defendant lift up the lid. Officer Valdez testified that he did not see anything on the floor of the room before

defendant entered. As defendant began leaving the room, he made a deliberate motion with his leg as if trying to kick something out of the way. That motion drew Officer Valdez's attention to the floor where he discovered a piece of black plastic with a cloth handle and a sharpened end. A video of the defendant's search depicted defendant kicking a small black object away from Officer Valdez after the strip search.

Trooper Brad Hetherington, a prison investigator of the Michigan State Police, testified that he interviewed defendant about the weapon and defendant denied possessing it. Trooper Hetherington also testified regarding his familiarity with weapons and explained that this particular item could be used as a weapon to injure another person.

Defendant testified that he was sleeping in his room when called out for a strip search. Defendant described his strip search which generally conformed to the description given by Officer Valdez. Defendant, however, testified that he never possessed the weapon and had never seen it before its discovery. Defendant admitted that he did try to kick the weapon away as he was leaving the room, but asserted that he did so because he wanted to get the weapon away from himself. Defendant confirmed that Trooper Hetherington interviewed him and that he denied ever possessing the weapon at that interview.

The trial court concluded that the only reasonable explanation for the presence of the weapon was that defendant had been concealing the weapon on his person since it had not been in the room before defendant entered with it. The trial court stated that the surveillance video made what transpired very clear. The trial court, therefore, found defendant guilty of a prisoner possessing a weapon.

Defendant attended his sentencing via Zoom. The trial court established that defendant and his counsel had reviewed the presentence investigation report (PSIR) and defendant affirmed that he could see and hear the trial judge, but he stated that he could not see his defense counsel during the proceeding. The trial court provided defendant an opportunity to deliver a brief allocution before the trial court imposed his sentence. Defendant now appeals.

## II. ANALYSIS

### A. GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that he is entitled to a new trial because the trial court's verdict was against the great weight of the evidence.

A defendant does not need to take any special steps to preserve a claim that a trial court's, as opposed to a jury's, findings or verdict was contrary to the great weight of the evidence. See MCR 2.517(A)(7); MCR 7.211(C)(1)(c). We review a great-weight challenge by deciding whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 616-617; 806 NW2d 371 (2011) (quotation marks and citation omitted). The trial court's factual findings in a bench trial are reviewed for clear error. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (citation omitted). "Conflicting testimony and questions of witness credibility are generally

insufficient grounds for granting a new trial. Absent exceptional circumstances, issues of witness credibility are for the trier of fact." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Generally, a verdict is against the great weight of the evidence only when "it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

The trial court convicted defendant of possession of a weapon in prison in violation of MCL 800.283(4), which provides:

> Unless authorized by the chief administrator of the correctional facility, a prisoner shall not have in his or her possession or under his or her control a weapon or other implement which may be used to injure a prisoner or other person, or to assist a prisoner to escape from imprisonment.

Defendant concedes his lawful imprisonment at Bellamy Creek Correctional Facility when the corrections officer found the weapon. He also concedes that such weapon could be used to injure a person. Defendant asserts that he never possessed the weapon and argues that other explanations for how the weapon entered the room were not excluded. Specifically, defendant contends that the weapon was already in the room before he entered, either under the trash can lid or hidden behind the door, and likely came from one of the other prisoners who were searched in the room before defendant. Defendant claims that the evidence preponderates against the conclusion that he possessed the weapon. We disagree.

Defendant's conviction is well supported by Officer Valdez's uncontroverted testimony. Officer Valdez testified that no weapon was in the vestibule before defendant entered. He testified that had one been in the vestibule he would have seen it. Officer Valdez described searching each article of defendant's clothing, which involved taking each article and searching until he was satisfied that it did not contain contraband. Officer Valdez then saw defendant try to kick the weapon that had appeared on the floor. Those facts strongly support the conclusion that defendant brought the weapon into the room, concealed somewhere in his clothes or body, and that the weapon fell out of its hiding place during the search before its discovery on the floor. The testimony and the trial court's conclusions are also corroborated by the video of the incident.[1]

Notwithstanding defendant's claim that other scenarios could explain the weapon's presence, defendant has failed to show that such speculative possibilities preponderate against the conclusion that defendant possessed the weapon. The record reflects that the prosecution presented sufficient evidence from which the trier of fact could conclude beyond a reasonable doubt that defendant committed the charged offense. Therefore, defendant has not shown that the great weight of the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. See *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). Accordingly, defendant is not entitled to a new trial.

---

[1] This Court can review a video "as easily as the trial court . . . ." *People v White*, 294 Mich App 622, 633; 823 NW2d 118 (2011).

B. PHYSICAL PRESENCE DURING SENTENCING

Defendant next argues that he is entitled to resentencing because he was not physically present during his sentencing hearing. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) (citation omitted). To preserve claims of error, a party must object before the lower court. See *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). To preserve for review by this Court a constitutional error claim that implicates a defendant's due-process rights, the issue must be raised in the trial court. *People v Williams*, 245 Mich App 427, 430-431; 628 NW2d 80 (2001). In this case, defendant did not raise the issue of his physical presence at his sentencing and made no objection to appearing remotely via Zoom. Therefore, he failed to preserve the issue for appellate review.

We review defendant's unpreserved constitutional claim for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain-error rule, defendant bears the burden to prove: 1) an error occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings. *Id*. If defendant satisfies those three requirements, we must determine whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence. *Id*.

Plain-error review applies with equal force to all constitutional errors, even those limited and rare constitutional errors deemed structural. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015). In *People v Davis*, ___ Mich ___; ___ NW2d ___ (2022), our Supreme Court explained that forfeited constitutional errors deemed "structural errors are particularly ill-suited to an analysis of whether the error affected the outcome of the trial court proceedings," *id*. at ___; slip op at 15, and that "the existence of a forfeited structural error alone satisfies the third prong of the plain-error standard, and a defendant need not also show the occurrence of outcome-determinative prejudice." *Id*. at ___; slip op at 17. The Court held that "a forfeited structural error creates a formal presumption that [the fourth] prong of the plain-error standard has been satisfied." *Id*. at ___; slip op at 18. The Court explained that the third and fourth prongs conceptually overlap so that "a forfeited structural error is very likely to also satisfy the fourth prong of the plain-error test." *Id*. at ___; slip op at 18-19. The Court clarified that in cases involving forfeited structural errors, a formal rebuttable presumption exists which will "shift the burden to the prosecutor to demonstrate that the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceeding." *Id*. at ___; slip op at 19. In such instances, the prosecutor must present specific facts that "affirmatively demonstrate that, despite the error, the overall fairness, integrity, and reputation of the trial court proceedings were preserved." *Id*.; slip op at 19.

Generally, a defendant should "raise objections at a time when the trial court has an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights." *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994). Had defendant objected to his lack of physical presence during sentencing, the trial court could have immediately adjourned the proceedings, and this issue on appeal would likely have been avoided.

Nevertheless, a criminal defendant has a constitutional right to be present at any stage of a trial during which substantial rights might be adversely affected, including during sentencing. *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970); see also *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984) (stating that a defendant has the "right to be present" during "imposition of sentence").[2] MCR 6.006(A) addresses when a defendant may be at a separate location as follows:

> District and circuit courts may use two-way interactive video technology to conduct the following proceedings between a courtroom and a prison, jail, or other location: initial arraignments on the warrant or complaint, probable cause conferences, arraignments on the information, pretrial conferences, pleas, *sentencings for misdemeanor offenses*, show cause hearings, waivers and adjournments of extradition, referrals for forensic determination of competency, waivers and adjournments of preliminary examinations, and hearings on postjudgment motions to amend restitution. [Emphasis added.]

A felony, as opposed to a misdemeanor, is an offense for which the offender may be imprisoned in state prison or punished by death. See MCL 750.7. Under MCL 777.17g, possession of a weapon by a prisoner is a felony. Defendant's sentencing occurred during the COVID-19 pandemic. At the time of defendant's sentencing, the Supreme Court had issued Administrative Order No. 2020-6, which required trial courts to make good faith efforts to hold all proceedings remotely in light of the precautions instituted during the early phases of the COVID-19 pandemic. See 505 Mich xc. While that order essentially required remote proceedings, it also cautioned trial courts to employ remote proceedings "consistent with a party's constitutional rights." Thus, to the extent defendant argues the remote sentencing violated MCR 6.006(A), he is wrong because AO 2020-6 superseded that rule while it remained in effect.

That the court rule was not violated is of no moment, for in *People v Heller*, 316 Mich App 314, 318; 891 NW2d 541 (2016), this Court recognized that defendants have a constitutional right to appear physically at their felony sentencings and virtual appearance is not a suitable substitute. This Court explained:

> Sentencing by video dehumanizes the defendant who participates from a jail location, unable to privately communicate with his or her counsel and likely unable

---

[2] The *Mallory* Court did not state it was the constitution that afforded defendant that right, nevertheless, it is safe to say that this right at least in part emanates from the Due Process Clause of the 14th Amendment because of the importance of sentencing in the criminal process, which includes a defendant's ability to address the court prior to the sentence being imposed. See *United States v Diggles*, 957 F3d 551, 558 (CA 5, 2020); *United States v Williams*, 641 F3d 758, 764 (CA 6, 2011); *United States v Jacques*, 321 F3d 255, 262-263 (CA 2, 2003); *United States v Agostino*, 132 F3d 1183, 1199 n 7 (CA 7, 1997), and *United States v Jackson*, 923 F2d 1494, 1496 (CA 11, 1991). This Court is bound by the United States Supreme Court's decisions but not by decisions of any lower federal courts. *Bienenstock & Assoc Inc v Lowry*, 314 Mich App 508, 515; 887 NW2d 237 (2016). Lower federal court decisions may be persuasive but they are not binding on state courts. *Id*.

to visualize all the participants in the courtroom. Moreover, a courtroom is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers. The courtroom setting provides a dignity essential to the process of criminal adjudication. Isolating a defendant from that setting during what may be the most decisive moment of his or her life clashes with the judge's duty to acknowledge the humanity of even a convicted felon. [*Id.* at 319 (quotation marks and citations omitted).]

In this case, defendant appeared remotely for his sentencing hearing because the trial court conducted the proceeding pursuant to AO 2020-6 during the COVID-19 pandemic. There is no indication on the record that defendant or his counsel either waived his right to appear in person or objected to proceeding by Zoom. The trial court sentenced defendant for a felony for which he had the right to appear in court at sentencing. See *Mallory*, 421 Mich at 247; *Heller*, 316 Mich App at 319; MCR 6.006(A). Although defendant failed to preserve his constitutional claim of error, he has established that the trial court committed a constitutional error, i.e., plain error.

Because, as discussed below, we are addressing an unpreserved nonstructural error, to obtain relief defendant must also prove that the error affected his substantial rights—i.e., "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v United States*, 585 US __, __; 138 S Ct 1897, 1904-1905; 201 L Ed 2d 376 (2018) (internal quotation marks omitted). Thus, defendant must successfully establish that, had he been physically present in the courtroom, there is a reasonable probability that his sentence would have been different. And, if he does that, it must be determined whether reversal is required because "the plain, forfeited error resulted in the conviction of an actually innocent defendant or seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceeding . . ." *Id.* (quotation marks and citation omitted; alterations and ellipsis in original). Accordingly, we must determine whether the plain error affected defendant's sentencing and, if it did so, whether it also seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Carines*, 460 Mich at 763-764; *Cain*, 498 Mich at 116.

Defendant does not assert that the plain error affected the outcome of the trial court's determination of his sentence for the offense for which he had been found guilty. Instead, he challenges the fairness and integrity of the sentencing proceedings because the trial court denied his physical presence. Although we are dealing with a constitutional right, as explained below, we are not dealing with a structural error, as (1) the right to be physically present at sentencing is designed to protect the defendant from an erroneous sentence, and not necessarily to protect some other interest, (2) the effects of sentencing a defendant remotely is not too difficult to measure, and (3) the error will not always result in fundamental unfairness. *Weaver v Massachusetts*, 582 US __; 137 S Ct 1899, 1908; 198 L Ed 2d 420 (2017). To this point, "[t]he list of structural errors that the Supreme Court has recognized is short and limited," and the "Supreme Court has never held that the exclusion of a defendant from a critical stage of his criminal proceedings constitutes a structural error." *Campbell v Rice*, 408 F3d 1166, 1172 (CA 9, 2005) (en banc). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v Clark*, 478 US 570, 578-79; 106 S Ct 3101; 92 L Ed 2d 460 (1986).

Defendant's remote participation in the sentencing was not a structural error. His physical absence from the courtroom—but actual participation in the sentencing—did not restrict defendant's ability to put in evidence or argument in favor of a low sentence. *Rose*, 478 US at 579. See also *Sullivan v Louisiana*, 508 US 275, 283; 113 S Ct 2078; 124 L Ed 2d 182 (1993) (Rehnquist, C.J., concurring). Nor did defendant's remote participation affect the composition of the record, or otherwise undermine the fairness of the criminal proceeding as a whole. *Washington v Recuenco*, 548 US 212, 218-19; 126 S Ct 2546; 165 L Ed 2d 466 (2006); *Neder v United States*, 527 US 1, 7-8; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (defining structural error). Additionally, any effect this type of error had on the sentencing is not difficult to discern, and had no effect on what was contained in the record. *Rose*, 478 US at 579 n 7. Instead, if it were necessary, all that would be required to determine whether defendant's physical presence impacted the sentence would be to remand for the trial court to indicate whether it did. And, as noted, defendant has not asserted that he lost an opportunity to present any additional evidence because of his physical absence.

Except for his physical absence from the courtroom, defendant's case was handled throughout in a constitutional manner. The record shows that at no time whatsoever did defendant or his counsel interpose any objections to the manner in which the sentencing proceeding took place. The record establishes that the trial court dealt with defendant in a thoughtful, humane, and respectful way. Further, defendant offers no argument challenging the accuracy or validity of his sentence.

That this error was not a structural one does not detract from the importance of this constitutional right, and the impact of defendant appearing remotely must be separately analyzed. As our Court recognized, and numerous other courts have held, in-person, face-to-face hearings can be critical to sentencing decisions.[3] Not only do in-person proceedings allow the court to gauge the veracity of a defendant during the hearing (including, perhaps most importantly, while listening to and watching defendant's allocution), but the formality of the courtroom, the presence of the attorneys, judge and staff, provide a solemn stage for such important decisions. Remote proceedings, despite the greatly improved and available technologies, simply do not compare to face-to-face interaction. See, e.g., *Heller*, 316 Mich App at 319-320; *Williams*, 641 F3d at 764 ("As our sister circuits have recognized, and anyone who has used video conferencing software is aware, 'virtual reality is rarely a substitute for actual presence.' "); *United States v Lawrence*, 248 F3d 300, 304 (CA 4, 2001) (Stating that federal rule 43 reflects the policy that "virtual reality is rarely a substitute for actual presence and that, even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it."), and *United States v Fagan*, 464 F Supp 3d 427, 429-30 (D Me, 2020) ("From thirty years of federal sentencing, I can attest to the importance of seeing the defendant in the same room at sentencing. Physical presence makes unavoidable the recognition that—in sentencing—one human being sits

---

[3] Defendant places great reliance on *Heller*, 316 Mich App 314. Because *Heller* did not address the issue under the plain-error standard that applies to defendant's unpreserved claim of error, it is not controlling.

in judgment of another, with a dramatic impact on the future of a living, breathing person, not just a face on a screen.").

Defendant does not suggest any irregularities with the sentencing other than he was not present in the courtroom at the time of sentencing. As noted, he and his counsel were active participants, and were able to make any arguments or statements in support of defendant's position. Defendant allocuted (both orally and in writing), his counsel (who was in the courtroom) addressed inaccuracies in the PSIR, and the court fully explained its middle of the guidelines sentence. Further, the trial court appeared to have no difficulty listening to defendant, and was familiar with him given a bench trial had been conducted. The record reflects that defense counsel appeared well prepared and able to fully represent defendant's interests. Additionally, the prosecution sought a sentence of not less than 36 months and the PSIR recommended a sentence of not less than 48 months. The trial court, in a careful and considered pronouncement of sentence, in which he even gave encouragement, counsel and advice to defendant, imposed a sentence of not less than 25 months.

There is no evidence, inference, nor indication that defendant's treatment likely would have been different had he been face-to-face with the sentencing judge. Accordingly, we conclude that there was not "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Because defendant has failed to meet the third prong of the *Carines* test, his assignment of error regarding his sentence being conducted remotely fails.[4]

For the foregoing reasons, we affirm defendant's conviction and sentence.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Christopher M. Murray

---

[4] Moreover, even if the error is deemed a forfeited structural error and the first three prongs of the plain-error standard are presumed met as explained in *Davis*, the prosecution has demonstrated that the plain forfeited error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. The prosecution has overcome the formal presumption by articulating the multiple aspects in which the trial court conducted the sentencing proceedings that establish the overall fairness and integrity of the proceedings and demonstrate that, despite defendant's physical absence from the courtroom, the overall propriety of the proceedings and the trial court's reputation were preserved. The prosecution points out that the trial court ensured the fairness and integrity of defendant's sentencing proceeding particularly in light of the circumstances of the global pandemic. See *State v Williams*, __ A3d __, __ (NH, 2021) ("Considering the extensive process the defendant received and the State's important interest in protecting public health during a global pandemic, and keeping in mind that 'the requirements of due process are flexible,' we cannot conclude that her due process rights were violated because the April 6 [suspended sentence] hearing was conducted by telephone, instead of in person."). Although decisions from other states are not binding, we may consider them as persuasive authority. *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011). Accordingly, we conclude that the prosecution met its burden under *Davis*, and defendant is not entitled to relief.