UNITED STATES of America,
Plaintiff–Appellee,

v.

Erina S. MARTIN, Defendant–Appellant.

No. 93-3254.

United States Court of Appeals,
Sixth Circuit

Argued March 8, 1994.

Decided May 16, 1994.

Samuel A. Yannucci, Asst. U.S. Atty., Akron, OH (argued and brief), for plaintiff-appellee.

Stewart I. Mandel (brief), Donald Green (argued), Office of the Public Defender, Cleveland, OH, for defendant-appellant.

Before: NELSON and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

SILER, Circuit Judge.

Defendant Erina Martin appeals her conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, Martin contends that the district court erred in failing to inform her of her right to self-representation and in denying her motion in limine to suppress evidence obtained when her probation officer searched her car. Martin also argues that the government failed to present sufficient evidence to support her conviction. For the reasons stated herein, we affirm the decision of the district court.

I.

On April 18, 1989, Los Angeles police officers observed a female, later identified as defendant Erina Martin, at the Federal Express office adjacent to the Los Angeles In-

ternational Airport acting in a suspicious manner. The officers observed her drive up to the office in a Mercedes Benz, get out of the car without any package or parcel, look around the parking lot, go into the Federal Express office, and come out again some ten or fifteen seconds later. She then returned to her car, removed a package, and went into the office again. Once she was inside the Federal Express office, the police observed her paying "abnormal attention" to the other customers.

The woman filled out an airbill indicating that the package was from Patty Hudson of Claremont, California, to the Hudson family at 1514 Third Street, N.E., Canton, Ohio. It is usual practice for the sender to include telephone numbers for both the sender and the recipient, but the airbill contained neither. The shipping charge was paid by cash.

The Drug Enforcement Agency ("DEA") obtained a search warrant for the package and found that it contained approximately 1.5 kilograms of cocaine. The next day, April 19, undercover DEA agents executed a controlled delivery of the package at the Canton, Ohio, address. Upon delivery, the package was accepted by a young man. Immediately after the delivery, the police observed the defendant come out of the house and look up and down the street several times before going back into the house. She was observed a couple of minutes later doing the same thing.

The police then executed a search warrant for the house at 1514 Third Street. The house was owned by Clara Martin, defendant's grandmother. Inside were Clara Martin, defendant Erina Martin, and Harvey Buchanan. Upon searching the house, the police discovered the unopened Federal Express parcel on a mattress in the dining room. In a locked filing cabinet in Erina Martin's room, the police found a scale, small plastic bags, a cutting plate, and Mannitol, a cutting agent for cocaine. The police obtained identification from all three individuals, but no arrests were made. Erina Martin was later identified as the woman observed at the Federal Express office in Los Angeles. An indictment, filed under seal in April 1990, charged Martin with one count of possessing

cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

During the fall of 1992, it was discovered that Erina Martin was on probation in Stark County, Ohio. The indictment was unsealed, and the DEA contacted Martin's probation officer, Linda Monter, who arranged for Martin to come to the probation office where the DEA arrested her. Following Martin's arrest, Monter searched Martin's car and arranged to have the car returned to Martin's residence. About a week later, Monter informed the DEA that she had documents taken from Martin's car and offered the documents to the DEA for review. At trial, a handwriting expert used these documents to identify the handwriting on the Federal Express airbill as Erina Martin's. The district court denied Martin's motion to suppress the evidence obtained from the probation officer's search of her car.

During trial, Martin's attorney informed the court that Martin was not satisfied with her representation and that she wanted another attorney. The court denied Martin's request, stating,

This Court is more than satisfied with the performance of Mr. Pappas and accepts his credentials as a practicing lawyer in this area for having experience, appropriate training, and skill.

## II.

■ On appeal, Martin contends that the district court had a duty to inform her that she had the right to represent· herself at trial. Martin argues that, when the district court was notified of Martin's dissatisfaction with trial counsel, the court should have, at a minimum, informed Martin that she could proceed pro se if she so desired.

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a state cannot impose upon a criminal defendant a state-appointed public defender. *Id.* at 836, 95 S.Ct. at 2541. The Court went on to recognize that the Sixth Amendment right to assistance of counsel "naturally . . . implies a right of self-representation." *Id.* at 821, 95 S.Ct. at 2534.

See also *United States v. Miller,* 910 F.2d 1321, 1324 (6th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). *Faretta,* however, is silent about whether trial courts have any duty to notify criminal defendants of this right, and this court, while recognizing that criminal defendants have a constitutional right to represent themselves, *see Miller,* 910 F.2d at 1324; *United States v. McDowell,* 814 F.2d 245, 248 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987); *Wilson v. Mintzes,* 761 F.2d 275, 278 (6th Cir.1985), has never determined whether a district court has to inform a defendant of his right to self-representation.

In essence, Martin's claim that she should have been informed of this right is an assertion that the right to self-representation can only be waived upon a knowing and intelligent waiver. However, "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Schneckloth v. Bustamonte,* 412 U.S. 218, 237, 93 S.Ct. 2041, 2052–53, 36 L.Ed.2d 854 (1973). *See also United States ex rel. Soto v. United States,* 504 F.2d 1339, 1345 n. 16 (3d Cir.1974). It is well-established that a defendant can reject his right to counsel only by a knowing and intelligent waiver. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *Miller,* 910 F.2d at 1324. While the right to self-representation is related to the right to counsel, the right to self-representation is grounded more in considerations of free choice than in fair trial concerns. *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540. Thus, the right to self-representation does not implicate constitutional fair trial considerations to the same extent as does an accused's right to counsel. *See Stano v. Dugger,* 921 F.2d 1125, 1143 (11th Cir.) ("The right to counsel ... is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does not attach unless and until it is

asserted.") (internal quotation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). As the constitutional basis of the right to self-representation does not require a knowing and intelligent waiver of that right, the district court need not advise a defendant of her right to proceed pro se prior to assertion of such a right.

The decision in *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir. 1965), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966), similarly indicates that the right to self-representation does not stem from core constitutional fair trial concerns. In *Maldonado,* decided before *Faretta,* [1] the court recognized a defendant's constitutional right to self-representation. *Id.* Nevertheless, the court specifically went on to state that a defendant need not be notified of this right. The court acknowledged the burdens and difficulties of a notice requirement and reasoned that "if notice of the right had to be given, the task of administering the overriding constitutional policy in favor of granting a lawyer to every person accused of a serious crime would become unduly treacherous." *Id.* at 16 (citations omitted).

Finally, we note that limitations and conditions placed on the right of self-representation counsel against requiring a trial court to notify a criminal defendant of this right. To assert the right of self-representation, a defendant must do so unequivocally. *Hamilton v. Vasquez,* 17 F.3d 1149 (9th Cir.1994); *United States v. Jones,* 938 F.2d 737, 742 (7th Cir.1991); *Maldonado,* 348 F.2d at 15. *See also Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. Such a requirement of clarity imposes an affirmative duty on defendants that is inconsistent with requiring district courts to notify a defendant of his right to proceed pro se.

Even where the right to self-representation is clearly invoked, it must be done so in a timely manner,[2] and courts will balance any such assertion against considerations of judi-

---

1. Because *Maldonado* is consistent with *Faretta* in acknowledging the constitutional basis of the right of self-representation, we find that the Second Circuit's reasoning remains valid.

2. In *Faretta,* the Court specifically noted that the defendant had requested that he be allowed to represent himself "[w]ell before the date of trial." 422 U.S. at 807, 95 S.Ct. at 2527.

cial delay. *See Robards v. Rees*, 789 F.2d 379, 383 (6th Cir.1986). In *Robards*, we upheld the district court's decision denying the defendant's motion to proceed pro se when the motion was not made until the day of trial and after the clerk had called the roll of jurors. *Id.* While we recognized the constitutional proportions of the right to self-representation, we were also cognizant of the impermissible delay that would result from granting the motion. *Id.* We determined that, because the defendant's motion was not timely, the trial court did not abuse its discretion in denying the request. *Id.*[3] *See also United States v. Brown*, 744 F.2d 905, 908 (2d Cir.) (right of self-representation is only unqualified if exercised before trial commences), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984). As with the requirement that the right of self-representation be asserted unequivocally, a defendant's obligation to assert the right in a timely manner runs counter to the notion of recognizing a duty on district courts to notify defendants of their right to self-representation.

Based on the general framework within which the constitutional right to self-representation exists, and in light of the approach taken by this and other courts to this right, we find no obligation on the part of the district court to notify Martin of her right to self-representation. Furthermore, we find no prejudice in Martin's inability to proceed pro se. Where a defendant merely expresses dissatisfaction with trial counsel's performance, as did Martin, we will not interpret this as a motion to proceed pro se; instead, it will be understood as an appeal to the trial court's discretion to substitute counsel. *See United States v. White*, 429 F.2d 711, 712 (D.C.Cir.1970).

### III.

Second, Martin challenges her probation officer's search of her car after her arrest and contends that the evidence seized in that search should have been suppressed. She contends that the police used her probation officer as a means of searching her car without the requirement of a warrant. On suppression issues, we review the district court's factual findings for clear error, and conclusions of law are reviewed *de novo*. *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992).

A probation officer need not have a warrant to conduct a search of a probationer where the probation officer is properly carrying out her official responsibilities. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *United States v. Holloway*, 740 F.2d 1373, 1383 (6th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). Furthermore, police officers and probation officers can work together and share information to achieve their objectives. *United States v. Merchant*, 760 F.2d 963, 969 (9th Cir.1985), *cert. granted*, 478 U.S. 1003, 106 S.Ct. 3293, 92 L.Ed.2d 708 (1986), *cert. dismissed*, 480 U.S. 615, 107 S.Ct. 1596, 94 L.Ed.2d 614 (1987). However, it is impermissible for a probation search to serve as subterfuge for a criminal investigation. *Id.*

Probation serves two related objectives: genuine rehabilitation and protecting the general public. *Griffin*, 483 U.S. at 875, 107 S.Ct., at 3169. Considering these objectives in light of Monter's knowledge that Martin was wanted on drug-related charges, it was reasonable for Martin's probation officer to search her car. Additionally, there was no evidence that her probation officer was acting either at the direction of the police or as a "stalking horse" to help the police evade the Fourth Amendment warrant requirement. *See United States v. Harper*, 928 F.2d 894, 896 (9th Cir.1991). We note that Monter did not immediately turn over to the DEA the documents found in Martin's car. Accordingly, we find no error in the district court's decision denying Martin's motion to suppress the evidence obtained by her probation officer's search of Martin's car.

---

3. We note that, if it was not an abuse of discretion, in *Robards*, to deny such a motion made on the first day of trial, the district court's decision, in the present case, to deny Martin's motion, when her motion was made after the trial was in full swing, is *a fortiori* a proper exercise of discretion.

## IV.

Finally, Martin challenges the sufficiency of the evidence supporting her conviction. Specifically, she contends that the government failed to produce any direct evidence linking her to the package of cocaine. We will sustain a guilty verdict if, viewing the record in the light most favorable to the government, substantial evidence exists to support the verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. DeClue,* 899 F.2d 1465, 1470 (6th Cir.1990). It is well settled that "circumstantial evidence alone can sustain a guilty verdict and that ... circumstantial evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Stone,* 748 F.2d 361, 362 (6th Cir.1984).

Based on the record below, substantial evidence supports the guilty verdict in this case. The identification of Erina Martin as the person who deposited the package with Federal Express in Los Angeles, her behavior at that time, the handwriting expert's testimony, her presence at the delivery address, and her actions immediately after the delivery all support the inference that she was in possession of the cocaine. *See United States v. Washington,* 586 F.2d 1147, 1153 (7th Cir.1978). The drug paraphernalia found in the cabinet in Martin's room can clearly be viewed as indicative of an intent to distribute. Martin contends that neither the cabinet nor its contents belonged to her. However, this testimony was presented at trial, and the jury had the opportunity to evaluate its credibility; on review, we will not delve into credibility issues. *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986).

**AFFIRMED.**