NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0560n.06
Filed: July 1, 2005

No. 04-3482

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| GEORGE WASHINGTON PENSON, | ) | |
| III, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**Before: MOORE, COLE, Circuit Judges and WISEMAN,[*] District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant George Washington

Penson, III ("Penson") challenges the validity of his conviction and sentence for three bank

robberies. Penson contends that he should receive a new trial based on several allegedly erroneous

evidentiary rulings by the district judge. Additionally, Penson argues that resentencing is required

as his current sentence violates the Supreme Court's decision in *United States v. Booker*, 125 S. Ct.

738 (2005). We agree that Penson's sentence violates *Booker*. Therefore, we **VACATE** Penson's

sentence and **REMAND** for resentencing. As to the other errors raised by the defendant, we

**AFFIRM** the district court's judgment.

---

[*]The Honorable Thomas A. Wiseman, United States District Judge for the Middle District
of Tennessee, sitting by designation.

# I. BACKGROUND

On March 13, 2003, Penson was released from prison after serving ninety-two months' imprisonment for four unarmed bank robberies. Prior to this incarceration, Penson was imprisoned in Ohio state prison and served 18 months' imprisonment for a parole violation. When Penson was released on March 13, Penson's niece, LaShell Penson ("LaShell") picked up Penson from the federal penitentiary in Elkton, Ohio with the intent of driving him home to Youngstown, Ohio, where Penson's sister and nieces resided. On the drive to Youngstown, Ohio, Penson had LaShell stop at two banks: Consumer's National Bank in Lisbon, Ohio and Sky Bank in North Lima, Ohio. LaShell remained in the car while Penson entered both banks. Following his release from federal prison Penson did not report to either his federal or state probation officers.

On March 17, 2003, Penson borrowed LaShell's vehicle, a burgundy Delta 88 Oldsmobile with the word "hot" scratched into the front hood. Penson drove the vehicle to the Sky Bank in North Lima and proceeded to rob the bank of over $29,000. Several witnesses observed the vehicle in the area of the bank at the time of the robbery. On April 4, 2003, Ashley Davis ("Davis"), Penson's seventeen-year-old niece, drove Penson to Akron, Ohio in Penson's black Jaguar. Penson then stole a vehicle from a grocery store parking lot and the two drove both cars to the First Merit Bank in Akron. Penson robbed the bank of approximately $21,000. He then left in the stolen vehicle, with Davis following him in the Jaguar. A bank customer followed the two cars for a distance but eventually stopped after Penson exited the stolen vehicle and pointed a gun at the customer. On April 10, 2003, Penson drove with LaShell and his girlfriend Angelique Stanford in LaShell's van to Lisbon, Ohio, where Penson stole another vehicle. The two vehicles proceeded to Consumer's National Bank, where Penson entered the bank and stole over $22,000. Based on

2

Penson's earlier withdrawal at the bank on March 13th, a bank teller and the bank manager were able to identify Penson as the robber.

Once Penson became a suspect as a result of this identification, FBI Special Agent Gerald Hopper ("Agent Hopper"), a member of the Mahoning County Violent Crimes Task Force assigned to investigate the robberies, contacted the Ohio Adult Parole Authority to gather further information on Penson. Parole Officer Robert O'Malley ("Parole Officer O'Malley") checked the Law Enforcement Automated Data System and discovered that there was an active warrant for Penson's arrest for a state parole violation. Parole Officer O'Malley then requested that Agent Hopper and the Violent Crimes Task Force assist him in arresting Penson as fugitive. Penson was later located and arrested outside Penson's sister's residence in Youngstown. Following his arrest Penson was advised of and waived his *Miranda* rights. Penson then confessed to committing all three bank robberies. The residence at which Penson was arrested was also searched after Penson's sister gave the officers consent to search. At the home, the police found money from the robberies along with the van and the burgundy Oldsmobile used during the robberies. The black Jaguar was later found at a repair shop.

On May 6, 2003, Penson was indicted on one count of bank robbery in violation of 18 U.S.C. § 2113(a) and two counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). Prior to trial, Penson moved to suppress "[a]ll evidence obtained directly or indirectly from searches and seizures of the Defendant, his residence, his domicile and/or any automobiles operated by him or to which he had access, on the ground that said searches and seizures were conducted without a warrant, without probable cause and not incident to a lawful arrest." Joint Appendix ("J.A." at 44) (Mot. to Suppress at 1). Penson also moved to suppress his confession on the grounds that his

3

*Miranda* rights had been violated. The district court denied Penson's motion, stating that no warrant was needed for the search because it had been authorized by Penson's sister and that Penson's *Miranda* rights had not been violated.

At trial, Davis testified to her involvement in the robbery of the First Merit Bank. During her testimony Davis was asked how long she had known Penson, to which she replied "I really had no relationship with him until he had got out of jail." J.A. at 127 (Trial Tr. at 134). Defense counsel objected to Davis's reference to Penson's prior incarceration and moved for a mistrial. The district court offered to give the jury a curative instruction but denied the motion for a mistrial on the grounds that the statement was unsolicited and Davis had been warned by the prosecution not to mention Penson's prior criminal history during her testimony. The trial continued and no curative instruction was given. Subsequently, Davis was asked how long Penson had owned a black Jaguar, to which Davis stated, "I'm not sure. He bought it soon as he got out." J.A. at 136 (Trial Tr. at 143). Defense counsel again objected to the reference to Penson's prior record, but the district court permitted questioning to continue. Later in the trial Randy Spano ("Spano"), a mechanic at the repair shop where Penson's Jaguar was found, testified. Spano was asked how many times he had spoken with Penson, and Spano replied, "Quite a few. I believe we spoke while he was incarcerated." J.A. at 112 (Trial Tr. at 199). Following this comment, defense counsel renewed his motion for a mistrial, and the district court denied the motion. At the close of trial, the jury found Penson guilty on all counts. Penson was then sentenced to 365 months' imprisonment.[1] Penson filed this timely appeal.

---

[1]Penson was also sentenced to 24 months' imprisonment for violating federal supervised release, to be served prior to the 365-month sentence.

## II. ANALYSIS

On appeal, Penson raises three claims. First, Penson argues that his arrest was unconstitutional and thus his motion to suppress his confession ought to have been granted. Second, Penson contends that the district court erred in denying his motion for a mistrial based on several references by witnesses to his past incarceration. Third, Penson asserts that he should be resentenced as he was sentenced in violation of *Booker*. We will address each these claims in turn.

### A. Motion to Suppress

When reviewing a district court's denial of a motion to suppress evidence, we review the factual findings for clear error and the legal conclusions de novo. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir.), *cert. denied*, 125 S.Ct. 635 (2004). The burden of proof is on the defendant to demonstrate "a violation of some constitutional or statutory right justifying suppression.*" United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (internal quotation marks and citation omitted). "When reviewing the denial of a motion to suppress evidence, we must consider the evidence in the light most favorable to the government." *Id.* (internal quotation marks and citation omitted).

Before the district court, Penson argued that his confession ought to be suppressed based on violations of his *Miranda* rights. On appeal, Penson now asserts an alternate theory for the suppression of his confession. Penson currently contends that his arrest violated the Fourth Amendment, and thus that his confession must be suppressed as a product of this illegal arrest. *See Wong Sun v. United States,* 371 U.S. 471, 484-85 (1963) (indicating that generally any evidence that is the fruit of an illegal search or seizure must be suppressed). The government asserts that this new theory was never advanced before the district court and thus cannot be raised before this court.

5

Appellee Br. at 19. The government's argument, however, confuses waiver, in which a defendant intentionally relinquishes a known right and may not raise that right on appeal, with forfeiture, in which a defendant fails to assert timely a right, and may only raise that right on appeal if the plain-error standard has been met. *See United States v. Osborne*, 402 F.3d 626, 630 (6th Cir. 2005) (discussing the difference for purpose of appeal between forfeiture and waiver). Here, Penson did not waive his right to challenge the validity of his confession on Fourth Amendment grounds. Instead, he merely failed to raise the challenge in a timely manner. We therefore may review Penson's claim and provide relief if the district court's admission of the confession was plainly erroneous. *See United States v. Olano*, 507 U.S. 725 (1993) (outlining the elements of the plain-error test). In this case, we find that no violation of Penson's Fourth Amendment rights occurred and thus the district court did not plainly err in denying Penson's motion to suppress his confession.

Penson argues that the officers investigating the bank robberies used Parole Officer O'Malley as a "stalking horse," meaning that the police used the state parole officer as a means of carrying out a seizure which the police had no investigatory authority to perform. We have previously recognized that "it is impermissible for a probation search [or seizure] to serve as subterfuge for a criminal investigation."[2] *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994). Nonetheless, it is wholly permissible for law enforcement officers and probation officers to "work

---

[2]We note the question whether the "stalking horse" theory is even a cognizable argument following the Supreme Court's decision in *United States v. Knights*, 534 U.S. 112 (2001). In *Knights* the Court stated that in determining the constitutionality of a search of a probationer "there is no basis for examining [the] official purpose"of the search. *Id.* at 122. As the Ninth Circuit noted in *United States v. Stokes*, 292 F.3d 964, 967 (9th Cir.), *cert. denied*, 537 U.S. 964 (2002), this holding seems to suggest that prior "cases holding searches of probationers invalid on the ground that they were subterfuges for criminal investigations is . . . no longer good law." We need not decide, however, whether the "stalking horse" argument is still good law as it does not apply to the circumstances of this case.

6

together and share information to achieve their objectives." *Id.* Thus, probation officers may properly request police assistance in executing their duties as probation officers. *United States v. Butcher*, 926 F.2d 811, 815 (9th Cir.), *cert. denied*, 500 U.S. 959 (1991). The only type of cooperation which the Fourth Amendment prohibits is the use of the probation system for investigatory purposes in order to permit law enforcement officers to evade the Fourth Amendment warrant requirement. *See Martin*, 25 F.3d at 296.

In this case, Parole Officer O'Malley was not used as a "stalking horse" in order to execute an otherwise illegal seizure of Penson. In determining that there was an outstanding warrant for Penson's arrest for parole violations and ensuring that the arrest warrant was executed, Parole Officer O'Malley was merely carrying out his duties as a parole officer. Penson's arrest at the behest of Parole Officer O'Malley was not an attempt by the police to evade the Fourth Amendment warrant requirement as there was an active warrant for Penson's arrest. The existence of the warrant must therefore defeat Penson's "stalking horse" argument. We therefore conclude that the district court did not err in denying Penson's motion to suppress his confession subsequent to arrest.

## B. Prior Incarceration References

Penson contends that the district court erred in denying his motion for a mistrial based on statements by Davis and Spano during trial which alluded to Penson's prior incarceration. We review a district court's evidentiary rulings, along with a district court's denial of a motion for a mistrial, for an abuse of discretion. *United States v. Humphrey*, 279 F.3d 372, 376 (6th Cir. 2002); *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993). "The scope of this discretion has been broadly construed, and the trial court's actions are to be sustained unless manifestly erroneous." *Humphrey*, 279 F.3d at 376 (internal quotation marks and citation omitted).

7

The government may not introduce evidence of a defendant's prior convictions where the defendant does not testify at trial and the defendant's character is not otherwise at issue. *United States v. Terry*, 729 F.2d 1063, 1070 (6th Cir. 1984). Therefore, it was erroneous for Davis and Spano to make statements which may have informed the jury of Penson's prior criminal history. We must determine, however, not only whether the admission of the statements was erroneous, but more importantly whether the district court abused its discretion by denying defense counsel's motion for a mistrial. *See id.* (noting that we must "review the record as a whole and determine whether the[] errors so adversely affected the rights of the defendants as to compel reversal. If not then we must determine whether the exercise of our supervisory powers require[s], as matter of sound judicial administration, the deterrent therapy of a new trial.").

In this case, we believe that the references made by Davis and Spano to Penson's past incarceration constituted harmless errors and thus did not require the district court to grant defense counsel's motion for mistrial. These statements were not intentionally elicited by the prosecutor, but were instead inadvertent slips by two legally unsophisticated witnesses. Additionally, none of the three statements informed the jury of the nature of Penson's criminal history. The statements only made the jury aware that Penson had been incarcerated in the past. The jury was not made aware of the fact that Penson had been convicted previously of bank robbery. The district court also offered to provide a curative instruction to jury as to the statements, but defense counsel did not accept this offer.

More importantly, even without these statements, the evidence against Penson was, as Penson concedes in his brief, "overwhelming." Appellant Br. at 31. At trial, the government introduced into evidence, inter alia,: (1) Penson's confession to all three bank robberies; (2) the

8

money and automobiles recovered from Penson's residence that were linked to the robberies; (3) eyewitness testimony of Penson's nieces and girlfriend who assisted Penson in the robberies; and (4) eyewitness testimony of others who observed the robberies. Consequently, the evidence properly introduced by the prosecution leaves little doubt as to Penson's guilt. Under the circumstances of this case, we therefore conclude that the witnesses' statements alluding to Penson's prior criminal history were harmless error and it was not an abuse of discretion for the district court to deny Penson's motion for a mistrial.

## C. Sentencing Error

Following the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005), both parties have agreed that Penson's sentence constituted plain error and that remand to the district court for resentencing is appropriate. *See United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005). We will therefore vacate Penson's sentence and remand the case for resentencing.

## III. CONCLUSION

For the reasons stated above, we **VACATE** Penson's sentence and **REMAND** for resentencing. As to the other errors raised by the defendant, we **AFFIRM** the district court's judgment.

9