**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0630n.06

**Case No. 18-2040**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Dec 19, 2019

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ROGER MAX AUSTIN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | | O P I N I O N |

BEFORE: COLE, Chief Judge; MERRITT and LARSEN, Circuit Judges.

COLE, Chief Judge. Defendant-Appellant Roger Max Austin was convicted by a jury of three counts related to his involvement in a methamphetamine-manufacturing conspiracy and was sentenced by the district court to 255 months in prison. Austin appeals his convictions and sentence. We affirm.

## I. BACKGROUND

Roger Max Austin and 19 co-defendants were indicted for their involvement in a conspiracy to manufacture and distribute methamphetamine. Austin, the only defendant who proceeded to trial, was alleged to have joined the conspiracy in 2015 after it had been ongoing for several years. By 2015, the hub of the conspiracy's manufacturing operations was in a house on Stewart Street in Warren, Michigan (referred to as the "Stewart house"). A tarp was set up in a

tent-like structure in the Stewart house's garage to facilitate meth production, and meth was cooked at the house on numerous occasions.

At trial, witnesses testified regarding Austin's friendship with occupants of the Stewart house. William Cornacchia, a meth producer, testified that one of the Stewart house's residents encouraged Cornacchia to meet Austin and had implied to Cornacchia that Austin also cooked meth. Cornacchia's girlfriend testified that another occupant of the house told her that Austin could get a lot of boxes of Sudafed to be used as an ingredient for meth production.

Austin, a member of the Devils Diciples [sic] Motorcycle Club, vehemently denied having joined the conspiracy, arguing at trial that he was instead in a buyer-seller relationship with the relevant individuals. Austin argued that he bartered Sudafed to obtain drugs, but that did "not make [him] involved in a conspiracy." (Def. Closing, Trial Tr., R. 520, PageID 4455.) According to Austin, bartering Sudafed for methamphetamine was cheaper than using cash because in exchange for one $10 box of Sudafed, he could receive an amount of methamphetamine worth $80 to $100.

A police investigation began in August 2015 in response to an informant's tip regarding methamphetamine production at the Stewart house. While conducting surveillance on September 10, 2015, police observed Austin at the house and smelled odors indicating methamphetamine was cooking. The next day, police observed Austin stop at Walgreens and CVS pharmacies and then return to the Stewart house.

Officers arrested Austin later that day as he was leaving a bar, as he had an outstanding felony warrant. On Austin's person, police found a loaded firearm and an Altoids tin containing baggies of crystal methamphetamine. In a pouch on Austin's motorcycle, police located prescription pills and a box of Sudafed.

The officers later searched the Stewart house, where they found methamphetamine and evidence of its manufacture. The house's detached garage contained evidence that it had served as a methamphetamine laboratory, including a "one-pot methamphetamine lab" in a plastic bottle, and two bottles with acid used for cooking meth. (Off. Bradshaw Testimony, Trial Tr., R. 337, PageID 2506–09.) Behind the garage was a burn pit containing burned bottles and battery shells.

Austin was indicted by a grand jury on September 29, 2015. Several superseding indictments were brought as additional co-defendants were added. An attorney was appointed to represent Austin, but the district court allowed him to withdraw in July 2016 after a breakdown in attorney-client communication.

Attorney Michael McCarthy was then appointed to represent Austin. On June 22, 2017, Austin attended an arraignment before a magistrate judge on his Third Superseding Indictment. At the end of the hearing, Austin indicated his desire to dismiss McCarthy and represent himself pro se. The magistrate judge responded, "I'm going to let you take that up at a later time and not at this moment, but that's between you and Mr. McCarthy." (Arraignment Tr., R. 517, PageID 4270.)

On September 15, 2017, Austin attended a pretrial conference before the district court, at which time he was also arraigned on the Fourth Superseding Indictment. At that conference, Austin told the court, "I want to continue on pro se." (Pretrial Hr'g Tr., R. 518, PageID 4283.) The court responded by asking McCarthy if this had been raised before, at which time McCarthy alerted the court to what Austin had told the magistrate judge at the arraignment on the Third Superseding Indictment.

Austin stated that he wanted to represent himself because he "believe[d]" he knew his "case well" and was "prepared to defend" himself. (*Id*. at PageID 4286.) The court then asked Austin a series of questions about his education, knowledge of the rules of evidence and criminal procedure, mental health history, and his understanding of his rights and the potential sentence he might face if convicted. The court also asked, "You understand I'm not going to change the schedule of this case if you decide to represent yourself?" (*Id.* at PageID 4291.) Austin replied, "Yes, your honor." (*Id.*)

The court declined to rule on Austin's request at the hearing, explaining it "need[ed] to think about this." (*Id*. at PageID 4292.) As "far as the Court [was] concerned," Austin was now raising his request "for the first time." (*Id*.) The court indicated that it "need[ed] to go over the case law," and "it may well be the case that [Austin was] too late to advance this request" given that the trial was approximately three weeks away. (*Id*. at PageID 4292–93.) On the other hand, the court indicated that it had "no interest in depriving . . . [Austin] of his Sixth Amendment right to self-representation." (*Id.* at PageID 4293.)

On October 3, 2017, the district court held a status conference. At that conference, the court asked Austin if he was "ready to defend" and "represent" himself, to which Austin replied, "Yes sir, I am." (Hr'g Tr., R. 367, PageID 3018.) The court asked Austin if he was "asking for a delay" or trying to "upset[] the schedule," to which Austin said, "No." (*Id*. at PageID 3025.) The court then stated that "the weight of the case authority" indicated that the court should permit Austin to represent himself. (*Id*.) The next day, the court entered an order formally granting Austin's request to proceed pro se, finding that Austin had knowingly and intelligently waived his right to counsel and remarking that Austin's request was not seeking to "upset or delay . . . the

court's trial schedule." (Self-Rep. Order, R. 327, PageID 1847–48.) The court appointed McCarthy as standby counsel.

The next day, October 5, a jury was impaneled. Austin was also arraigned on the Fifth Superseding Indictment, which outlined the three charges for which Austin was tried: 1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count I); 2) carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count II); and 3) conspiring to manufacture, distribute, and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count III).

The trial began with opening statements on October 10, 2017. In Austin's opening, he admitted that he was guilty of the first charge against him, being a felon in possession. However, he denied that he was guilty of Counts II and III. Austin told the jury, "I did buy Sudafed, and I used it to purchase meth, but I did not join no conspiracy or sell methamphetamine to nobody." (Def. Opening, Trial Tr., R. 332, PageID 1927.)

The jury returned a verdict on October 18, finding Austin guilty on all three counts on which he was tried. The jury's verdict as to the conspiracy count also made a specific finding regarding the quantity of methamphetamine that Austin agreed would be involved in the conspiracy: 50 grams of methamphetamine or 500 grams or more of a mixture containing methamphetamine.

Austin's sentencing hearing took place on August 21, 2018. Just like at his trial, Austin represented himself with McCarthy serving as standby counsel. Austin made several objections to the sentencing guidelines calculations articulated in the probation department's presentence report. Of particular relevance to his appeal, Austin stated an objection to the application of a

three-point enhancement under § 2D1.1(b)(13)(C)(ii) for creating a substantial risk of harm to human life or the environment, which the district court overruled.

Austin also stated a narrow objection to the application of a two-point enhancement for maintaining a drug house under U.S.S.G. § 2D1.1(b)(12). He made a factual objection to the notion that he had extensive personal ties to the Stewart house. The prosecutor responded that the drug-house enhancement could nonetheless apply because Austin could be held responsible for the reasonably foreseeable conduct of his co-conspirators. Austin did not object to this proposition, and the district court, in turn, applied the drug-house enhancement on the basis that Austin was responsible for his co-conspirators' maintenance of the Stewart house.

Austin also requested a two-point offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The court rejected this request given that Austin had consistently denied having participated in the conspiracy and had required the government to prove its case at trial.

The district court calculated Austin's offense level under the sentencing guidelines at 33. The number 33 was determined as follows: The base offense level was calculated at 30 under U.S.S.G. § 2D1.1(a)(5) due to the quantity of drugs found by the jury. The two-point drug-house enhancement under U.S.S.G. § 2D1.1(b)(12) and the three-point substantial-risk-of-harm enhancement under § 2D1.1(b)(13)(C)(ii) brought the offense level up to 35. Then the court applied a two-point reduction for the defendant having been a "minor participant" in the criminal activity under § 3B1.2, resulting in a final offense level calculation of 33.

Given the defendant's criminal history category of III, his guidelines range was 168–210 months for Counts I and III, which were grouped pursuant to § 3D1.2(c). In addition, the conviction on Count II under 18 U.S.C. § 924(c) required an additional 60-month mandatory consecutive sentence. The court imposed a sentence within the guidelines range, sentencing

Austin to 120 months on Count I, 195 months on Count III to run concurrent with Count I, and 60 months on Count II to run consecutive to Counts I and III.

After imposing the sentence, the district court inquired of the defendant whether he had "any objections, misstatements, corrections, or anything of that nature that [he] need[ed] to bring to the Court's attention," to which Austin replied, "No, your honor."  (Sentencing Hr'g Tr., R. 522, PageID 4596.)  Austin filed a timely notice of appeal.

## II.  ANALYSIS

Austin raises one argument on appeal to challenge his convictions, asserting that the district court erred by delaying its grant of Austin's request to represent himself pro se until the eve of trial, thereby depriving him of sufficient time to prepare.  Because this argument is without merit, we affirm Austin's convictions.

Austin also appeals his sentence, raising three challenges to the district court's calculation of his offense level under the 2016 sentencing guidelines—the version of the guidelines that governed his sentence and govern this appeal.  *See* 18 U.S.C. § 3553(a)(4)(A)(ii) (providing that a court shall consider the sentencing range set forth in the guidelines that are "in effect on the date the defendant is sentenced").  Austin contends that the district court erred when it: 1) applied a three-level enhancement for creating a substantial risk of harm to human life or the environment under U.S.S.G. § 2D1.1(b)(13)(C)(ii) because the court failed to address all four factors required by Application Note 18(B); 2) applied a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12), given that Austin did not personally maintain the premises; and 3) declined to apply a two-point

reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  As explained below, we reject Austin's challenges and affirm.[1]

##### A.      The Defendant's Self-Representation Request

Austin first argues that the district court violated his Sixth Amendment rights by delaying the grant of his self-representation request until the eve of jury selection and nearly three weeks after it was made, thereby depriving Austin of adequate time to meaningfully prepare for trial.  While the parties dispute which standard of review should govern the court's consideration of this claim, we need not decide which standard governs, as Austin's claim is meritless even under de novo review.  *See United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017).

The Sixth Amendment provides the accused with "the right to self-representation—to make one's own defense personally."  *Faretta v. California*, 422 U.S. 806, 819 (1975).  However, this right is "not absolute."  *Martinez v. Ct. of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 161 (2000).  A criminal defendant may only represent himself at trial if he "knowingly and intelligently waive[s] his right to counsel," *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004), and makes his self-representation request "in a timely manner," *United States v. Martin*, 25 F.3d 293, 295–96 (6th Cir. 1994).

Austin's argument relies on the Ninth Circuit's decision in *United States v. Farias*, in which the defendant made his self-representation request one day before trial.  618 F.3d 1049, 1050–51 (9th Cir. 2010).  The district court in *Farias* told the defendant that the trial would not be

---

[1] After briefing in this appeal was completed, Austin filed a pro se motion to file a supplemental brief raising additional arguments.  We typically deny litigants' requests to file a supplemental pro se brief when they are represented by counsel who has already filed a brief on their behalf, as Federal Rule of Appellate Procedure 31(a) allows litigants "a single brief, not two." *United States v. Fontana*, 869 F.3d 464, 472–73 (6th Cir. 2017); *see also, e.g., United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011) ("Because [the defendant] was represented by counsel on this appeal, we decline to address these pro se arguments.").  We denied Austin's motion in an order on November 13, 2019. Austin then filed a pro se motion to reconsider this order, which we deny for the same reason.  We therefore decline to reach Austin's additional pro se arguments.

continued, and thus he would only have one day to prepare to represent himself. *Id.* As a result, the defendant proceeded to trial with counsel. *Id.* The Ninth Circuit vacated the defendant's conviction, finding that the lower court had committed structural error by "foreclosing any possibility of a continuance" and thereby "effectively den[ying the defendant] the right to meaningfully represent himself." *Id.* at 1055. The Ninth Circuit proclaimed that "a right to proceed pro se without adequate time to prepare renders that right 'meaningless.'" *Id.* at 1054.

Contrary to Austin's argument, the facts in *Farias* are not comparable to the case at hand. Here, there was no suggestion to the district court that Austin lacked sufficient time to prepare to represent himself. To the contrary, Austin repeatedly told the court that he was prepared to proceed to trial while representing himself. On September 15, he told the district court that he "believe[d]" he knew his "case well" and was "prepared to defend" himself, (Pretrial Hr'g Tr., R. 518, PageID 4286), and on October 3, when the court asked Austin if he was "ready to defend" and "represent" himself, Austin responded, "Yes sir, I am," (Hr'g Tr., R. 367, PageID 3018). Not only did Austin never imply that he wanted a continuance, he affirmatively indicated to the court that one was not needed.

Austin asserts that the district court's error was not in failing to sua sponte grant a continuance, but in the court's taking until October 4 to issue an order granting his request, nineteen days after Austin made his request on September 15. Yet Austin's criticism of the district court's delay is unavailing. The district court indicated on September 15 that it needed time to research the caselaw before making the consequential decision to grant Austin's request to represent himself. We are reluctant to demand district courts rush their decisions and rule from the bench on self-representation requests instead of prudently taking the time to review caselaw, as the district court chose to do here.

There may be cases where a district court's delay in ruling is sufficiently extreme that a defendant could reasonably argue he was unfairly prejudiced, or where a court abuses its discretion in denying a continuance after issuing a delayed ruling. *See, e.g.*, *United States v. Gallo*, 763 F.2d 1504, 1524 (6th Cir. 1985) (explaining the district court abused its discretion in denying a reasonable request for a continuance that resulted in defense counsel only having ten days after arraignment to prepare for a complex trial). This is not such a case. Austin repeatedly represented to the court that he was prepared to represent himself, on the regularly scheduled trial date, without any need for a continuance. We thus reject Austin's contention that the district court committed reversible error in delaying its grant of his self-representation request.

### B. The Substantial-Risk-of-Harm Sentencing Enhancement

Section 2D1.1(b)(13)(C)(ii) of the 2016 sentencing guidelines provides a three-level enhancement if "the offense involved the manufacture of amphetamine or methamphetamine and the offense creates a substantial risk of harm to (I) human life . . .; or (II) the environment." Application Note 18(B) provides four factors that a court must consider in applying this enhancement, which is often referred to as the "substantial-risk-of-harm enhancement." *See* U.S.S.G. § 2D1.1 cmt. n.18(B); *United States v. Layne*, 324 F.3d 464, 469 (6th Cir. 2003) (describing that "consideration of the factors set out in the Application Note[] . . . [is] mandatory").

Austin argues that the court erred when it applied the substantial-risk-of-harm enhancement. He asserts that: 1) the district court's findings "were procedurally deficient" because the court failed to address all four factors required by Application Note 18(B), and 2) its "substantive conclusions" were also "erroneous" and "warrant reversal." (Austin Br. 34.) Austin objected at sentencing to the general applicability of this enhancement, but he did not specifically object to the court's procedural failure to address each of the four factors required by Application

Note 18(B). For the reasons described below, we reject Austin's argument that the district court reversibly erred in its application of this enhancement.

### 1. The Factors Applicable to the Substantial-Risk-of-Harm Enhancement

Application Note 18(B) provides that in determining "whether the offense created a substantial risk of harm to human life or the environment, the court *shall* include consideration of the following factors:

> (I) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.
>
> (II) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
>
> (III) The duration of the offense, and the extent of the manufacturing operation.
>
> (IV) The location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm."

U.S.S.G. § 2D1.1 n.18(B)(i) (emphasis added). At Austin's sentencing hearing, the court did not explicitly address each factor. The court's analysis focused on the fourth factor and emphasized that the conspiracy's meth manufacturing took place in "a residential area in close proximity to where people are residing," not a "commercial or industrial area away from human habitation." (Sentencing Hr'g Tr., R. 522, PageID 4508–09.) The court also addressed the second factor regarding disposal, commenting that the burn pit associated with the methamphetamine production was a "place where undesired chemical by-products are disposed of, dumped on the ground and potentially leach into the environment." (*Id.* at PageID 4508.)

In regard to the first factor—concerning the quantity and storage of chemicals—the court did not make any explicit finding at sentencing. However, during the government's argument, it

asserted to the court that "in some of the photographs taken at the time the search warrant was executed, there were two, two or three pop bottles in varying degrees of the manufacturing process." (*Id.* at PageID 4506.) Neither the parties nor the court discussed the third factor, the duration or extent of the operation, during the court's consideration of the substantial-risk-of-harm enhancement. However, later in the sentencing hearing, the defendant said he had known his co-conspirators "for less than two weeks" when he was arrested, and the court considered the duration and extent of his participation in the conspiracy in applying a two-level reduction for his being a "minor participant" under U.S.S.G. § 3B1.2. (*Id.* at PageID 4528, 4534–35.)

### 2. Review of the District Court's Conclusions Regarding Factors Two and Four

The district court concluded that two of the factors described in Application Note 18(B) supported application of the enhancement. We accept the district court's factual findings unless clearly erroneous and apply de novo review to the mixed question of law and fact regarding whether factors two and four support the enhancement in Austin's case. *See United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005). A de novo review leads us to conclude that factors two and four both support application of the substantial-risk-of-harm enhancement.

The district court did not make specific factual findings regarding the other two factors—numbers one and three—thus preventing this court from conducting de novo review of them. *See, e.g., Brown v. Marshall*, 704 F.2d 333, 334 (6th Cir. 1983) ("[T]he court of appeals is not equipped to . . . function as a fact-finder."). We will later discuss whether a remand to the district court is necessary for consideration of factors one and three, ultimately concluding it is not.

### a. Factor Two: The Manner of Chemical Disposal

Application Note 18(B)'s second factor concerns the manner in which chemicals were disposed of and their likelihood of release into the environment. The district court found that the

"burn pit" at the Stewart house that was "within a couple feet of [the] methamphetamine production facility" was "a place where undesired chemical by-products" of meth production "[we]re disposed of, dumped on the ground and potentially leach into the environment." (Sentencing Hr'g Tr., R. 522, Page ID 4508.)

Austin argues that the "district court just noted that the chemicals could *potentially* leach into the environment" and "[s]peculation is specifically prohibited as a basis for the enhancement." (Austin Br. 35.) However, such an argument is misplaced. The district court here was presented with photograph evidence of a burn pit, which specifically showed the method of disposal. No speculation regarding the manner of disposal was necessary. *Cf. Davidson*, 409 F.3d at 313–14. Although the court did not conclusively find that the chemicals in fact had leached into the environment, the second factor, which asks the court to assess the "the likelihood of release into the environment," does not require such a finding. U.S.S.G. § 2D1.1 cmt. n.18(B)(i)(II). The district court found that the chemicals were likely to release into the environment, just as the application note describes. Given the photographic evidence of the burn pit, such a factual determination was not clearly erroneous. And in light of such a finding, the second factor supports application of the substantial-risk-of-harm enhancement.

#### b. Factor Four: The Location of the Methamphetamine Laboratory

As the district court found, the methamphetamine laboratory that was maintained at the Stewart house was located in "a residential area in close proximity to where people are residing." (Sentencing Hr'g Tr., R. 522, PageID 4508–09.) Where a laboratory is located in a residential neighborhood, in contrast to a remote area, the fourth factor "strongly militates in favor of the application" of the substantial-risk-of harm enhancement. *Layne*, 324 F.3d at 471; *cf. Davidson*, 409 F.3d at 314. Thus, this factor strongly supports application of the enhancement.

### 3. The District Court's Failure to Consider Factors One and Three

Austin argues for the first time on appeal that the district court erred by failing to specifically address the two other factors dictated by Application Note 18(B): the quantity of the chemicals, and the duration and extent of the manufacturing operation. Because the district court did not plainly err by failing to expressly address these two factors, we reject Austin's argument.

### a. Standard of Review

Where a defendant fails to object below, the court of appeals traditionally reviews for plain error. *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006). However, in *United States v. Bostic*, this court "exercise[d] [its] supervisory powers over the district courts and announce[d] a new procedural rule, requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." 371 F.3d 865, 872 (6th Cir. 2004). "If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal." *Id.* "A district court can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the sentence that have not been previously raised." *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006).

After announcing Austin's sentence, the district court asked:

> Mr. Austin, are there any objections, misstatements, corrections, or anything of that nature that you need to bring to the Court's attention? You don't have to agree with the sentence, but if you have anything specific to say now that [the] sentence has been imposed with respect to the manner in which it was imposed, this is the time to point that out, so that if some mistake I have made in articulating the sentence, it can be corrected now instead of later. Is there anything of that sort, or any other generalized objection you may have to make?

(Sentencing Hr'g Tr., R. 522, PageID 4596.) Austin responded, "No, your honor." (*Id.*)

Austin argues that the district court's question does not satisfy *Bostic*'s requirements, but we disagree. This court has found similar questions satisfactory under *Bostic*. *See, e.g.*, *United States v. Taylor*, 800 F.3d 701, 708 (6th Cir. 2015) (holding that "any other objections as far as sentencing, or any other matters I failed to address on behalf of the defendant," qualified as the *Bostic* question).

Because the district court asked the *Bostic* question, Austin's newly-raised objection is subject to plain error review. "To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Gardiner*, 463 F.3d at 459 (citation omitted). A district court's error affects substantial rights where there is "a reasonable probability that the error affected the outcome" of the sentencing. *United States v. Marcus*, 560 U.S. 258, 262 (2010).

### b. Factors One and Three

Contrary to Austin's assertion, a district court's failure to explicitly address each and every mandatory factor at sentencing does not always necessitate reversal. *See, e.g.*, *United States v. Vonner*, 516 F.3d 382, 388 (6th Cir. 2008) (en banc) (describing that the district court did not plainly err where it only mentioned the 18 U.S.C. § 3553(a) mandatory sentencing "factors that were directly relevant" to the defendant). When the Eighth Circuit was confronted with the same argument that Austin now brings—whether the district court had erred by failing to expressly address the application note's factors in applying an enhancement for substantial risk of harm—it "decline[d] to [remand for] a rote recitation of the . . . factors when . . . the sentencing record makes clear that their substance has been adequately considered." *United States v. Patterson*, 481 F.3d 1029, 1034 (8th Cir. 2007).

In contrast, the Ninth Circuit—in a case heavily cited by Austin—reversed the district court in *United States v. Staten*, where the district court failed to adequately consider the application note's factors in applying the substantial-risk-of-harm enhancement. 466 F.3d 708, 717 (9th Cir. 2006). In *Staten*, the lower court had improperly relied on generic factors that would be common to any methamphetamine manufacture, instead of making factual findings specific to the case. *Id.* at 716–17. Such an approach would similarly be inappropriate in this circuit, as the Sixth Circuit has said that "[n]either the language of [the enhancement] nor its commentary suggests that the" substantial-risk-of-harm enhancement "should be applied any time methamphetamine is manufactured in anything less than professional laboratory conditions." *Davidson*, 409 F.3d at 314.

While it would have been prudent for the district court here to have addressed all four factors more explicitly in its sentencing, we do not conclude that the district court committed plain error by failing to do so. A court need not find that *every* factor listed in Application Note 18(B) applies in order to apply the enhancement. *See Layne*, 324 F.3d at 471 (affirming application of the enhancement where only three of the four factors supported its applicability). The district court here addressed the two factors that were particularly relevant to Austin's case, both of which the court concluded—correctly—strongly supported application of the enhancement.

Furthermore, plain error did not occur given that it does not appear that the district court's failure to address these two other factors affected Austin's substantial rights. To start, there is no indication that consideration of the first factor, the quantity and storage of the chemical substances found at the laboratory, would have moved the needle in favor of Austin. The government argued at sentencing "that two or three pop bottles in varying degrees of the manufacturing process" were found when the search warrant was executed at the Stewart house. (Sentencing Hr'g Tr., R. 522,

PageID 4506.) The district court did not make any express findings in relation to the government's representation. However, there was testimony presented at trial to support the government's assertion. A police officer who helped execute the search warrant testified that in the Stewart house's detached garage police found a green two-liter bottle that served as a "one-pot methamphetamine lab" and two bottles that were "active gas generators" that were full of "a very strong acid." (Off. Bradshaw Testimony, Trial Tr., R. 337, PageID 2506–09.) Moreover, while Austin's brief argues that "the government presented no information at sentencing that the offense involved a particularly large quantity" of chemicals, (Austin Br. 32), this court has held that even a "minimal amount" can support application of the enhancement under this factor, given the "inherent dangers of methamphetamine manufacturing" that the guideline provision is "designed to address," *United States v. Whited*, 473 F.3d 296, 299–300 (6th Cir. 2007) (internal citation omitted). Given the evidence presented at trial, there is no reason to believe that consideration of the first factor would have militated against application of the enhancement.

In regard to the third factor, the government mistakenly urges the court to consider the duration and extent of the operation since 2012, the year when it appears Austin's co-conspirators began cooking methamphetamine. This argument ignores the directive that "a defendant cannot be held accountable under [the relevant conduct provision] for 'the conduct of [other] members of a conspiracy *prior* to the defendant joining the conspiracy.'" *Donadeo*, 910 F.3d at 895 n.4 (quoting U.S.S.G. § 1B1.3 cmt. n.3(B)) (emphasis added). Yet even focusing on the manufacturing operation during the period when Austin participated, this factor supports application of the enhancement.

In *Layne*, we held that the third factor supported application of the enhancement where the methamphetamine laboratory had been operating for "at least two weeks" and had "manufactured several batches of methamphetamine." 324 F.3d at 470. Here, Austin approximated at sentencing that he had known his co-conspirators for slightly less than two weeks, and the jury found that Austin had personally agreed that at least 50 grams of meth (or 500 grams of a mixture containing meth) would be involved in the drug-manufacture conspiracy. While the duration of Austin's involvement was slightly shorter than the duration in *Layne*, the extent of the operation appears larger given the sizeable drug quantity found by the jury. The third factor therefore seems to support application of the enhancement.

In short, there is no indication that consideration of factors one and three would have militated against application of the enhancement. The district court's failure to explicitly address factors one and three did not affect Austin's substantial rights, and accordingly does not constitute plain error. *See Marcus*, 560 U.S. at 262.

C.      **The Drug-House Sentencing Enhancement**

Section 2D1.1(b)(12) of the sentencing guidelines provides that "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by **2** levels." Austin argues that the district court erred by applying the drug-house enhancement in his case because he did not personally maintain a drug house, and § 2D1.1(b)(12)'s text and accompanying commentary "require[] the *defendant* to maintain the premises." (Austin Br. 28.) The government appears to concede that the house was "maintained not by [the] defendant but by co-conspirators," but argues that the district court's decision to apply the enhancement was correct because Austin is held responsible for the reasonably foreseeable conduct of his co-conspirators under the relevant conduct provision of the sentencing guidelines. (Gov't Br. 1, 20.)

The sentencing guidelines' relevant conduct provision dictates:

> *Unless otherwise specified*, . . . specific offense characteristics . . . in Chapter Two . . . shall be determined on the basis of . . . all acts and omissions of others that were—
>
> (i)       within the scope of the jointly undertaken criminal activity,
>
> (ii)     in furtherance of that criminal activity, and
>
> (iii)    reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added). Austin avers that the guidelines "otherwise specif[y]" an exception to the application of the relevant conduct provision in the context of the drug-house enhancement.

Austin, however, made a different objection to the district court. At the sentencing hearing, Austin's objection regarding this enhancement was on a narrow factual basis. He did not object to the application of the relevant-conduct provision to the drug-house enhancement, and thus he did not "apprise[]" the district court of the "basis for his objection" that he now raises on appeal. *See Bostic*, 371 F.3d at 871 (internal citation and quotation marks omitted). Because the district court asked the *Bostic* question, *see supra*, we review for plain error.

The Sixth Circuit has not directly ruled on the appropriateness of applying the drug-house enhancement based solely on the conduct of co-conspirators, and other circuits appear to have expressed differing viewpoints. *Compare United States v Miller*, 698 F.3d 699, 706 (8th Cir. 2012) ("[U.S.S.G.] § 2D1.1(b)(12), like the 21 U.S.C. § 856(a)(1) offense that it parallels, requires proof that the specific defendant being sentenced maintained the premises 'for the purpose of' drug manufacture or distribution.") *with United States v. Holmes*, 767 F. App'x 831, 839 (11th Cir.

2019) ("Nothing in § 2D1.1(b)(12) prohibits a sentencing court from imposing the premises enhancement based on the jointly undertaken criminal activity of co-conspirators."). For an error to be "plain," it must, "at a minimum," be "clear under current law." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (internal citation omitted). Because the district court "lack[ed] . . . binding case law" from the U.S. Supreme Court or the Sixth Circuit on this question, we are "preclude[d]" from "finding of plain error." *Id*. We thus hold that the district court did not plainly err in applying the drug-house sentencing enhancement, and we decline to opine in dicta on the appropriateness of this enhancement had the objection been preserved. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012) (describing that it is prudent for this court to "decline to opine unnecessarily").

### D.    Acceptance of Responsibility

Austin argues that the district court erred by denying his request at sentencing for a two-point offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Austin asserts that he accepted responsibility by "admitt[ing]" at trial to "possessing the gun and drugs at issue" and "merely challenged the applicability of the [conspiracy] statute to his conduct." (Austin Br. 37.) Austin's argument is without merit.

Section 3E1.1 provides a two-point offense level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." The defendant bears the burden of demonstrating that he accepted responsibility. *United States v. Chalkias*, 971 F.2d 1206, 1216 (6th Cir. 1992). Application Note 2 instructs that proceeding to trial "does not automatically preclude a defendant from consideration," as there are "rare situations" where a defendant "clearly demonstrate[s] acceptance of responsibility" despite proceeding to trial. U.S.S.G. § 3E1.1 cmt. n.2. By way of example, the note describes a situation "where a defendant goes to trial to assert

and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.*

"[A] defendant must accept responsibility for all counts before he is entitled to a reduction in sentence for acceptance of responsibility." *United States v. Chambers*, 195 F.3d 274, 278–79 (6th Cir. 1999) (affirming a district court's denial of the reduction where the defendant admitted to being a felon in possession but denied his guilt as to another offense). "Generally a question of fact, the [district] court's determination of whether a defendant has accepted responsibility normally enjoys the protection of the clearly erroneous standard." *United States v. Morrison*, 983 F.2d 730, 732 (6th Cir. 1993).

The district court did not clearly err in denying Austin's request for this reduction, as he repeatedly asserted his factual innocence during trial. In his opening statement, he explained, "I did buy Sudafed, and I used it to purchase meth, but I did not join no conspiracy or sell methamphetamine to nobody." (Def. Opening, Trial Tr., R. 332, PageID 1927.) In his closing statement, he asserted, "I'm not . . . connected to the overall drug distribution conspiracy itself." (Def. Closing, Trial Tr., R. 520, PageID 4460.) He continued, "So on Count 1 . . . I'm guilty of it. . . . Now as far as Count 2 and 3 go, I'm not guilty." (*Id.*) Austin persisted in maintaining his innocence as to the conspiracy charge through sentencing, explaining at the sentencing hearing, "I still stand by my innocence that I was not involved with the conspiracy with these people." (Sentencing Hr'g Tr., R. 522, PageID 4510.)

Austin's assertions of innocence were not simply, as appellate counsel now claims, legal arguments challenging the applicability of the conspiracy statute to the defendant's conduct. Austin emphatically denied that he had committed a key element of the conspiracy charge—that he entered into any agreement with his co-conspirators to manufacture, distribute, and possess with

intent to distribute methamphetamine. The district court, "in a unique position to evaluate [the] defendant's acceptance of responsibility," U.S.S.G. § 3E1.1 cmt. n.5, observed at sentencing that Austin had "contested the facts at every turn, put[ing] the [g]overnment to its proofs," (Sentencing Hr'g Tr., R. 522, PageID 4510.)

We have repeatedly affirmed denial of this reduction where defendants attempted to minimize their role in a conspiracy or admitted to some incriminating facts but not to each factual element of the crime charged. *See, e.g.*, *Chalkias*, 971 F.2d at 1216 (affirming a district court's refusal to give the two-point reduction where the defendants "attempted to minimize their roles in the drug conspiracy"); *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990) (affirming a district court's refusal to grant a two-level reduction where the defendant "never admitted [to] any fraudulent intent"). A defendant is not entitled to a reduction where he denies guilt on at least one count and does "no more than admit an offense with which he was not charged and admit conduct which he could not deny." *United States v. Head*, 927 F.2d 1361, 1374 (6th Cir. 1991). Here, Austin admitted to possessing drugs and a gun, which were facts that would have been difficult for him to deny. His admission to mere possession of methamphetamine was an admission to a crime with which he was not charged. On the other hand, he strongly contested any involvement in drug trafficking or the larger drug conspiracy, thus requiring the government to prove this at a jury trial. The district court was correct to reject Austin's request for this reduction.

### III. CONCLUSION

For the foregoing reasons, we affirm.